[L.A. No. 31603. Dec. 22, 1983.]

COMMITTEE ON CHILDREN'S TELEVISION, INC., et al.,
Plaintiffs and Appellants, v.
GENERAL FOODS CORPORATION et al., Defendants and Respondents.

COUNSEL

Sidney M. Wolinsky, Lois Salisbury and Robert L. Gnaizda for Plaintiffs and Appellants.

Honora Kaplan, Norah M. Wylie and Gitlin, Emmer, Kaplan & Bohn as Amici Curiae on behalf of Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, John J. Hanson, J. Edd Stepp, Jr., Steven C. McCracken and Gail E. Lees for Defendants and Respondents.

## Opinion

**BROUSSARD, J.**—Plaintiffs appeal from a judgment of dismissal following a trial court order sustaining demurrers without leave to amend to their fourth amended complaint. The complaint essentially charges defendants—General Foods Corporation, Safeway Stores, and two advertising agencies—with fraudulent, misleading and deceptive advertising in the marketing of sugared breakfast cereals. The trial court found its allegations insufficient because they fail to state with specificity the advertisements containing the alleged misrepresentations. We review the allegations of the complaint and conclude that the trial court erred in sustaining demurrers without leave to amend to plaintiffs' causes of action charging fraud and violation of laws against unfair competition and deceptive advertising.

### I. Summary of the Pleadings And Procedure.

Plaintiffs filed their original complaint on June 30, 1977, as a class action on behalf of "California residents who have been misled or deceived, or are threatened with the likelihood of being deceived or misled," by defendants in connection with the marketing of sugared cereals.[1] The named plaintiffs included five organizations (The Committee on Children's Television, Inc.; the California Society of Dentistry for Children; the American G.I. Forum of California; the Mexican-American Political Association; the League of United Latin American Citizens), individual adults, and individual children.

The principal defendant is General Foods Corporation, the manufacturer of five "sugared cereals"—Alpha Bits, Honeycomb, Fruity Pebbles, Sugar Crisp, and Cocoa Pebbles—which contain from 38 to 50 percent sugar by weight. The other corporate defendants are two advertising agencies—Benton and Bowles, Inc., and Ogilvy & Mather International, Inc.—which handled advertising of these cereals, and Safeway Stores, which sold the products to plaintiffs. Finally, the complaint includes as defendants numerous officers and employees of the corporate defendants.

When the court sustained a demurrer to the third amended complaint, it ruled that no cause of action could be stated on behalf of the organizational plaintiffs. The individual plaintiffs remaining then filed their fourth amended complaint; the validity of this complaint is the principal issue on appeal.

---

[1]Defendants' demurrers did not attack the description of the class or the suitability of the case as a class action. Questions concerning the certification of the class remain to be resolved in further proceedings.

The fourth amended complaint presents seven causes of action: two based upon consumer protection statutes,[2] four sounding in fraud, and one for breach of warranty. The first cause of action is based on Business and Professions Code sections 17200-17208, the unfair competition law. Paragraph 34 alleges that defendants "engaged in a sophisticated advertising and marketing program which is designed to capitalize on the unique susceptibilities of children and preschoolers in order to induce them to consume products which, although promoted and labelled as 'cereals,' are in fact more accurately described as sugar products, or candies." The complaint thereafter refers to sugared cereals as "candy breakfasts."

Paragraph 35 lists some 19 representations allegedly made in television commercials aimed at children. Most of these representations are not explicit but, according to plaintiffs, implicit in the advertising. They include, for example, the implied representation that "children . . . who regularly eat candy breakfasts are bigger, stronger, more energetic, happier, more invulnerable, and braver . . .," that eating such products is a "'fun' thing . . . to do," that the products possess or impart "magical powers," etc. Some representations, however, are more specific: that the sugared cereals are "grain products," are "healthful and nutritious," contain adequate amounts of elements essential to diet, and "are the most important part of a well balanced breakfast."[3]

---

[2]Plaintiffs deleted an additional cause of action based on the Consumer's Legal Remedies Act (Civ. Code, § 1750 et seq.) because they had not complied with section 1782 of that act, which requires the consumer to notify defendants of his grievance and demand rectification 30 days or more before filing a complaint.

[3]Paragraph 35 of the complaint reads as follows:

"35. The advertising scheme routinely and repeatedly employs and utilizes, in commercials aimed at children, each of the following representations which are conveyed both visually and verbally:

"(a) Children and young children who regularly eat candy breakfasts are bigger, stronger, more energetic, happier, more invulnerable, and braver than they would have been if they did not eat candy breakfasts.

"(b) Eating candy breakfasts is a 'fun' thing for children to do, and is invariably equated with entertainment and adventure.

"(c) The sweet taste of a product ensures or correlates with nutritional merit.

"(d) Eating candy breakfasts will make children happy.

"(e) Bright colors in foods ensure or correlate with nutritional merit.

"(f) Candy breakfasts are grain products.

"(g) Candy breakfasts are more healthful and nutritious for a child than most other kinds and types of cereals.

"(h) Adding small amounts of vitamins and minerals to a product automatically makes it 'nutritious.'

"(i) Candy breakfasts inherently possess and/or impart to those ingesting them magical powers, such as the capacity to cause apes and fantastic creatures to appear or disappear.

"(j) Candy breakfasts contain adequate amounts of the essential elements of a growing child's diet, including protein.

"(k) The 'premiums' (small toys packaged in with the candy breakfast as an inducement

Plaintiffs allege that commercials containing these representations are broadcast daily. Although the commercials changed every 60 days, "they retain consistent themes and each convey . . . the representations as set forth." Defendants, but not plaintiffs, know the exact times, dates, and places of broadcasts. Plaintiffs further allege that the same representations appear in other media, and on the cereal packages themselves.

Paragraph 42 asserts that defendants concealed material facts, such as the sugar content of their products, that "[t]here is no honey in Honeycomb, no fruit in Fruity Pebbles," that sugared cereals contribute to tooth decay and can have more serious medical consequences, and that they cost more per serving than breakfast foods of greater nutritional value.[4] Such con-

---

to the child) are very valuable and are offered free as a prize in each box of candy breakfast.

"(l) Candy breakfasts are the most important part of a 'well-balanced breakfast' and are at least as nutritious as milk, toast and juice.

"(m) Candy breakfasts calm a child's fears and dispel a child's anxiety. . . .

"(n) Candy breakfasts have visual characteristics which they do not in fact possess, such as vivid colors and the capacity to glitter or to enlarge from their actual size to a larger size.

"In addition to the foregoing representations specified in Paragraph 35 (a) through (n), in each of the commercials for each of the products specified below the advertising scheme repeatedly, uniformly and consistently utilizes and relies upon the following representations with respect to particular products:

"(o) Cocoa Pebbles are good for a child to eat whenever he or she is hungry, and it is a sound nutritional practice to eat chocolatey tasting foods, such as Cocoa Pebbles, for breakfast.

"(p) Honeycomb (i) contains honey and (ii) consists of pieces which are each at least two (2) inches in diameter and (iii) will make a child big and strong.

"(q) Alpha-Bits (i) will enable a child to conquer his or her enemies, (ii) can be used by a child easily to spell words in his or her spoon, (iii) are an effective cure for the child's anxieties, and (iv) have magical powers and can impart magical powers to a child. . . .

"(r) Fruity Pebbles (i) contain fruit and (ii) emit auras, rainbows or mesmerizing colors.

"(s) Super Sugar Crisp (i) should be eaten as a snack food without danger to dental health, (ii) should be eaten as a nutritious snack whenever a child is hungry, (iii) makes a child smart and (iv) is coated with golden sugar and such sugar is very valuable."

[4]Paragraph 42 of the fourth amended complaint reads as follows:

"42. In the advertising scheme planned and participated in by each and every Defendant, none of the following facts are ever disclosed:

"(a) The percentage of sugar and chemicals together in the products advertised ranges from 38% to 50% of the total weight of the product;

"(b) There is no honey in Honeycomb, no fruit in Fruity Pebbles, and the premiums packed into the boxes of Alpha Bits and Super Sugar Crisp cost no more than a few pennies at most;

"(c) Eating candy breakfasts may contribute to tooth decay in children and adults;

"(d) Eating candy breakfasts as a snack will cause tooth decay;

"(e) Children should brush their teeth soon after eating sugary foods;

"(f) For many children, excessive sugar consumption will have serious and detrimental health consequences, including obesity, heart disease, and other adverse health consequences;

"(g) For children with already existing health problems, especially diabetes, consuming candy breakfasts may have serious and detrimental health consequences;

"(h) There is a serious controversy over the adverse effects of sugar on the health of

cealment, plaintiffs allege, when joined with the affirmative misrepresentations listed in paragraph 35, render the advertisements misleading and deceptive.

The complaint asserts at length the special susceptibility of children to defendants' "advertising scheme," and explains how defendants take advantage of this vulnerability. It further asserts that, as defendants know, the desires and beliefs of children influence and often determine the decision of adults to buy certain breakfast foods. Finally, claiming that defendants will continue deceptive practices unless enjoined, the first cause of action seeks injunctive relief, plus restitution of monies paid by plaintiff class for "candy breakfasts."

Plaintiffs' second cause of action is based on Business and Professions Code section 17500-17572, which prohibits false or misleading advertising. Since false or misleading advertising is a form of unfair competition (Bus. & Prof. Code, § 17200), plaintiffs' second cause of action incorporates by reference the paragraphs charging unfair competition in the first cause of action.

The third through sixth causes of action set out various aspects of the tort of fraud. The third cause of action charges deliberate fraud in violation of Civil Code section 1710, subdivision 1. Incorporating the allegations of the first cause of action, it adds allegations of plaintiffs' reasonable reliance upon defendants' representations, especially in light of defendants' claim to superior knowledge about the nutritional value of foods. The fourth cause of action adds allegations of negligent misrepresentation (Civ. Code, § 1710, subd. 2); the fifth cause of action adds fraudulent concealment (Civ. Code, § 1710, subd. 3). The sixth cause of action is based on common law fraud. Each of these causes of action asserts proximate causation, and claims compensatory damages of $10 million; those counts asserting intentional misrepresentation include a prayer for punitive damages.[5]

---

children;

"(i) Candy breakfasts are not the most important part of a balanced breakfast;

"(j) If eaten at all, candy breakfasts should not be consumed in large quantities and whenever a child is hungry;

"(k) Candy breakfasts cost more per serving than non-pre-sweetened breakfast cereals or hot cereals and more than other foods of better nutritional value than candy breakfasts;

"(l) A child's welfare is best served by accepting nutritional advice from his or her parents when such advice conflicts with advice given in television commercials;

"(m) The happy, adventure-filled fantasy portrayal of eating candy breakfasts is unrealistic and cannot be duplicated by any child."

[5]Finally, plaintiffs asserted, but subsequently abandoned, a seventh cause of action claiming breach of express warranty. Defendants' general demurrer did not discuss the seventh

The prayer for relief is extensive, and includes some novel requests. In addition to seeking damages, restitution, and injunctive relief, plaintiffs seek warning labels in stores and on packages, creation of funds for research on the health effects of sugar consumption by young children, public interest representatives on defendants' boards of directors, and public access to defendants' research on the health effects of their products.[6]

Defendants demurred to the fourth amended complaint for failure to state a cause of action and for uncertainty.[7] The trial court sustained the demurrers without leave to amend. The trial judge explained the basis for his ruling: "[I]n order to state a cause of action for fraud or for breach of warranty, there must be alleged with specificity the basis for the cause and that is, if there are advertisements which contain fraudulent matters, those advertisements must be set out. [¶] In paragraph 35, which is the heart of the allegations concerning the conveying of the representations, we have just a series of very general allegations to which there is no reference of an advertisement actually made. . . . [¶] Paragraph 38 which makes the allegations concerning media dissemination set out no television stations, no other media, except for the fact that these ads were run on television stations every day in Southern California for a four-year period. [¶] This gives the defendant practically no kind of information concerning that which the defendant must answer, and it doesn't give the court a sufficient factual basis for its administration of the case."

Appealing from the judgment of dismissal, plaintiffs contend that their fourth amended complaint states, or can be amended to state, a valid cause of action. They also ask us to review certain rulings by the trial court respecting earlier versions of their complaint. They point out that in sustaining a demurrer to their second amended complaint, the court denied leave to amend as to causes of action asserting breach of fiduciary duty and violation of the Sherman Food, Drug and Cosmetic Law (Health & Saf. Code, § 26000 et seq.). In addition, when considering plaintiffs' third cause

---

cause of action for breach of warranty, and although the trial court entered judgment for defendants, it does not appear to have sustained a demurrer without leave to amend to this cause of action. On appeal, however, plaintiffs did not mention this cause of action, which led defendants to claim plaintiffs had abandoned any claim for breach of warranty. At oral argument plaintiffs acknowledged their failure to pursue this cause of action.

[6]We discuss plaintiffs' right to seek damages, restitution, and injunctive relief in this opinion, but take no position on the suitability of the other remedies requested.

[7]Defendants also demurred on the ground that allegations were insufficient as to the child plaintiffs and, for different reasons, as to the adult plaintiffs. The court overruled the demurrer as to the child plaintiffs. It sustained the demurrer as to the adult plaintiffs but stated that, if the complaint were not otherwise defective, it would grant leave to amend. Neither of these grounds of demurrer present issues on appeal.

of action, the court ruled without leave to amend that the organizational plaintiffs had no cause of action, and that none of the plaintiffs could seek damages for violations of the unfair competition or false advertising laws. ■ Although ordinarily an appellate court will not consider the allegations of a superseded complaint (see *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362]), that rule does not apply when the trial court denied plaintiffs leave to include those allegations in an amended complaint.

In reviewing the issues raised by the fourth amended complaint and the earlier rulings of the trial court, we first consider the causes of action based upon various consumer protection statutes. We then review the various causes of action for statutory and common law fraud. Lastly, we take up plaintiffs' asserted cause of action for breach of fiduciary duty. Issues concerning the standing of plaintiffs and the available remedies will be discussed in connection with each cause of action.

## II. Causes of Action Based on Consumer Protection Statutes.

Plaintiffs' first cause of action in the fourth amended complaint seeks injunctive relief and restitution under Business and Professions Code section 17200 and subsequent sections (the unfair competition law). The operative language appears in section 17203: "Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

The term "unfair competition" receives a broad definition. A recent Court of Appeal decision summarized its breadth. "Historically, the tort of unfair business competition required a *competitive* injury. However, the language of section 17200 . . . 'demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his own behalf or on behalf of the public generally.' (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 110 [101 Cal.Rptr. 745, 496 P.2d 817].) ■ Thus, section 17200 is not confined to anticompetitive business practice but is equally directed toward '"the right of the *public* to protection from fraud and deceit."' (*Ibid.*) Furthermore, the section 17200 proscription of 'unfair competition' is not restricted to deceptive or fraudulent conduct but extends to any *unlawful*

business practice (*id.,* at p. 111). The Legislature apparently intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur (*id.,* at p. 111; *People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]; see also Howard, *Former Civil Code, Section 3369: A Study in Judicial Interpretation* (1979) 30 Hastings L.J. 705; Note, *Unlawful Agricultural Working Conditions as Nuisance or Unfair Competition* (1968) 19 Hastings L.J. 398, 408-409)." (*Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 927 [162 Cal.Rptr. 194].

Plaintiffs' second cause of action is based on Business and Professions Code section 17500 and subsequent sections (the false advertising law), which prohibits the dissemination in any advertising media of any "statement" concerning real or personal property offered for sale, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Bus. & Prof. Code, § 17500.) Section 17535 authorizes injunctive relief and restitution. (See *Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d 442, 450 [153 Cal.Rptr. 28, 591 P.2d 51].) Any violation of the false advertising law, moreover, necessarily violates the unfair competition law.[8]

In addition to the causes of action asserted in the fourth amended complaint, plaintiffs' second amended complaint also asserted a cause of action based on the Sherman Food, Drug and Cosmetic Law (Health & Saf. Code, § 26000 et seq.). Section 26460 provides that "[i]t is unlawful for any person to disseminate any false advertising of any food, drug, device, or cosmetic. An advertisement is false if it is false or misleading in any particular." Unlike the Business and Professions Code provisions cited earlier, this act does not expressly provide for private enforcement. The parties vigorously dispute whether a private right of action should be implied under this statute,[9] but the question is immaterial since any unlawful business practice, including violations of the Sherman law, may be redressed

[8] Section 17200 defines "unfair competition" to include "unlawful, unfair, or fraudulent business practice and unfair, deceptive, untrue or misleading advertising *and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.*" (Italics added.)

[9] In *Kievlan* v. *Dahlberg Electronics, Inc.* (1978) 78 Cal.App.3d 951 [144 Cal.Rptr. 585], the Court of Appeal allowed a private suit to enjoin false advertising of a hearing aid in violation of the Sherman law. The opinion did not discuss the issue whether a private right of action could be implied under the act. Federal courts, however, have refused to permit a private action under the federal Food, Drug and Cosmetic Act (21 U.S.C. § 301 et seq.), the analogous federal statute. (See *Pacific Trading Co.* v. *Wilson & Co., Inc.* (7th Cir. 1976) 547 F.2d 367, 370.)

by a private action charging unfair competition in violation of Business and Professions Code sections 17200 and 17203.[10]

In sum, plaintiffs rely on three statutes—the unfair competition law, the false advertising law, and the Sherman Food, Drug and Cosmetic Law—all of which in similar language prohibit false, unfair, misleading, or deceptive advertising. In the present context we discern no difference in the scope of these enactments (apart from the fact that the Sherman law is limited to food, drugs, and cosmetics) or the meaning of their provisions. We proceed, therefore, on the basis that any advertising scheme involving false, unfair, misleading or deceptive advertising of food products equally violates all three statutes.

■ To state a cause of action under these statutes for injunctive relief, it is necessary only to show that "members of the public are likely to be deceived." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 876 [127 Cal.Rptr. 110, 544 P.2d 1310]; see *Payne* v. *United California Bank* (1972) 23 Cal.App.3d 850, 856 [100 Cal.Rptr. 672] and cases there cited.) Allegations of actual deception, reasonable reliance, and damage are unnecessary. The court may also order restitution without individualized proof of deception, reliance, and injury if it "determines that such a remedy is necessary 'to prevent the use or employment' of the unfair practice . . . ." (*Fletcher* v. *Security Pacific National Bank, supra,* 23 Cal.3d 442, 453.)

Insofar as plaintiffs seek injunctive relief and restitution under the cited consumer protection statutes, defendants' principal basis for demurrer is the charge that the complaint fails to describe the alleged deceptive practices with sufficient particularity. Defendants assert that plaintiffs should not merely describe the substance of the misrepresentations, but should state the specific deceptive language employed, identify the persons making the misrepresentations and those to whom they were made, and indicate the date, time and place of the deception.

■ The complaint in a civil action serves a variety of purposes (see 3 Witkin, Cal. Procedure (2d ed. 1971) p. 1690), of which two are relevant

---

[10]Section 26461.5 of the Sherman law provides that "[i]t is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded." Plaintiffs claim the addition of large quantities of sugar to cereals constitutes adulteration in violation of this section.

We do not believe plaintiffs' claim under section 26461.5 states a different basis for relief than do their claims under section 26460 of the Sherman law or the cited sections of the Business and Professions Code. In each case the claim does not rest on the sugar content of the product alone, but upon the advertising program which, it is alleged, conceals the sugar content and markets the product as a "cereal" instead of a "candy breakfast."

here: it serves to frame and limit the issues (see *Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 4 [187 P.2d 752]) and to apprise the defendant of the basis upon which the plaintiff is seeking recovery (see *Leet* v. *Union Pac. R.R. Co.* (1944) 25 Cal.2d 605, 618-619 [155 P.2d 42, 158 A.L.R. 1008]; *Perkins* v. *Superior Court* (1981) 117 Cal.App.3d 1, 6 [172 Cal.Rptr. 427]). In fulfilling this function, the complaint should set forth the ultimate facts constituting the cause of action, not the evidence by which plaintiff proposes to prove those facts.[11] (See *Green* v. *Palmer* (1860) 15 Cal. 411, 415.)

We applied these principles in our decision in the *Jayhill* case (*People* v. *Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191]), a suit charging encyclopedia salesmen with false and misleading advertising in violation of Business and Professions Code section 17500 et seq. Our opinion explained that "[t]he complaint alleges that defendants, 'have . . . engaged in a scheme to mislead customers by a series of misrepresentations.' It is then charged that certain specific misrepresentations were made to 'customers solicited' by a particular defendant. Attached as exhibits to the complaint are the sales dialogues allegedly employed by some of the defendants, containing the representations in question. The clear implication of these allegations is that each defendant made the misrepresentation attributed to him to each customer solicited. [¶] Defendants argue that the allegations are insufficient because they do not state the names of the customers allegedly solicited, the names of the salesmen making the misrepresentations, and the time and place of the misrepresentations. In our view, these evidentiary facts need not be pleaded, and the acts relied upon by the Attorney General as constituting the violations are alleged in sufficient detail to apprise defendants of the basis of the cause of action. If defendants require further specifics in order to prepare their defense, such matters may be the subject of discovery proceedings." (Pp. 287-288.)

Defendants suggest that *Jayhill* held only that the failure to plead the exact language of the misrepresentation in text is cured by including that language in an exhibit to the complaint. The *Jayhill* exhibits, however, included only "the sales dialogues allegedly employed by *some* of the defendants" (p. 288, italics added), yet our decision upheld the cause of action against all defendants. ■ We therefore interpret *Jayhill* as holding that a plaintiff need not plead the exact language of every deceptive statement; it is

---

[11]The requirement that fraud be pleaded with specificity, discussed in part III of this opinion, does not apply to causes of action under the consumer protection statutes.

sufficient for plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme.[12]

■ The fourth amended complaint in the present case describes the alleged deceptive scheme in considerable detail. Paragraph 35 alleges some 19 misrepresentations—some general, others relatively specific. Paragraph 42 lists material facts which are not disclosed. Finally, plaintiffs allege that each misrepresentation appears (and every listed material fact is concealed) in every advertisement for the specified product during the period in question.[13] There is thus no doubt as to what advertisements are at issue, nor as to what deceptive practices are called into question.[14] We believe these allegations are sufficient to notify the defendants of the claim made against them, and to frame the issues for litigation.[15]

Defendants' objection, as we see it, is not really one of lack of specificity or notice. Basically defendants believe that the allegations of paragraph 35 are not a fair paraphrase of the actual language of the advertisements, and that if plaintiffs could be compelled to state the exact language, it would be clear, for example, that defendants are not really representing that Cocoa Puffs will make children braver or that Alpha Bits impart magical powers.

■ It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading. (*Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 702 [141 Cal.Rptr. 189].) It "admits the truth of all material factual allegations in

---

[12]Plaintiffs have attached copies of cereal box covers as an exhibit to the complaint, but have not attached a representative selection of television advertisement storyboards, even though plaintiffs have now obtained the storyboards by discovery. In this respect, their complaint is less informative than the complaint in *Jayhill*, since in that case the exhibits included a representative selection of the deceptive sales pitch. For the reasons explained in text, we do not believe plaintiffs' failure to attach representative storyboards is fatal to a cause of action under the consumer protection laws. In part III of this opinion, however, we indicate that such attachments may be necessary to comply with the requirement that fraud be pleaded with specificity.

[13]We are skeptical of plaintiffs' claim that every advertisement includes every misrepresentation. But to require plaintiffs in their complaint to review every advertisement to determine, for example, whether the April 1977 advertisements for Fruity Pebbles implied that they would dispel a child's anxiety, would greatly increase the complexity of the pleading without adding any significant increase in clarity.

[14]Plaintiffs' complaint may be uncertain, however, as to what media, other than television and cereal boxes, were employed to advertise the sugared cereals.

[15]We have not reviewed the allegations of paragraphs 35 and 42 to determine whether every alleged misrepresentation and nondisclosure is actionable. Some of the representations may constitute nonactionable expressions of opinion; likewise some nondisclosures may involve matters which defendants had no duty to disclose.

the complaint . . .; the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) ▮ We must therefore assume that defendants did in substance make each of the representations listed in paragraph 35 (and omit to state material facts as described in paragraph 42) in each advertisement within the period described by the complaint. Defendants' contention that the words and images used do not constitute such misrepresentations, and did not conceal material facts, frames an issue for trial, not demurrer.

▮ The unsuitability of a demurrer to test the accuracy of a complaint is particularly marked in the present case. Plaintiffs do not, for the most part, claim that defendants made explicit oral or written representations. Instead, they claim that defendants used language, and presented images, in a form such that a particularly susceptible and naive audience—one composed largely of preschool children—would believe defendants were making those representations. Even if plaintiffs pled the exact language and sequence of visual images making up a television advertisement, it would be difficult for judges unaided by expert testimony to determine how a three-year-old would interpret that advertisement.

Important policy considerations also argue against requiring plaintiffs to set out the specific language of each advertisement. Plaintiffs allege that defendants carried out a large scale program of deceptive advertising in which the specific advertisements change constantly, but all follow a pattern of making, in one form or another, certain misleading and deceptive representations. If such is the case, to require plaintiffs to plead the specifics of each advertisement would render a suit challenging the overall program impractical. The complaint would have to include thousands of pages setting out specifics which are largely within defendants' knowledge. The cost and difficulty of compiling, organizing, and setting down the information would seriously deter the filing of any such complaint. The effect of such a pleading requirement, moreover, would not be limited to discouraging private suits; it would also seriously hamper suits by public officials seeking to enjoin schemes of unfair competition and deceptive advertising.

▮ We conclude that the allegations of plaintiffs' fourth amended complaint are sufficient to overcome a general demurrer and to state causes of action for injunctive relief and restitution under both the unfair competition law and the false advertising law. (As we noted earlier, it is immaterial whether they state an independent cause of action under the Sherman Food,

Drug and Cosmetic Law, since any violation of that law would constitute unfair competition under section 17200.)

We also hold that the organizational plaintiffs have standing to sue under both the unfair competition law and the false advertising law. With respect to the former, section 17204 provides expressly that an action may be prosecuted "upon the complaint of any board, officers, person, corporation or association, or by any person acting for the interests of itself, its members or the general public." Construing this language, the court in *Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65 [164 Cal.Rptr. 279] stated that "we read the statute as expressly authorizing the institution of action by any person on behalf of the general public. The Legislature has provided that suit may be brought by any person acting in his own behalf *or* on behalf of the general public." (P. 72; see also *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 110 [101 Cal.Rptr. 745, 496 P.2d 817].) Substantially identical language appears in section 17535 of the false advertising law.

We do not, however, decide whether a plaintiff other than a business competitor can recover damages on a cause of action based on the unfair competition or false advertising law.[16] Resolution of this issue is not essential to provide plaintiffs with an adequate remedy in the present case. As explained in part III of this opinion, the nonorganizational plaintiffs can recover damages under their causes of action for fraud, while the organizational plaintiffs have suffered no legally cognizable damages under any cause of action.

III. Causes of Action Based on Fraud.

Plaintiffs base their third, fourth, fifth and sixth causes of action on the tort of fraud. Civil Code section 1710 defines that tort: "A deceit [fraud] . . . is either: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact . . . ." Plaintiffs' third cause of action accordingly charges intentional misrepresentation (citing subd. 1); the fourth cause

---

[16]For discussion of this issue, compare *United Farm Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334 [120 Cal.Rptr. 904], allowing damages under the unfair competition law, with *Chern* v. *Bank of America, supra,* 15 Cal.3d 866, 875, barring damages under the false advertising law; see generally, Note, *Prevention of Unfair Business Practices in California: A Proposal for Effective Regulation* (1980) 32 Hastings L.J. 229.

of action charges negligent misrepresentation (citing subd. 2); and the fifth .charges fraudulent concealment (citing subd. 3). Plaintiffs add a sixth cause of action for "common law" fraud, but do not explain any distinction between statutory and common law concepts relevant to the present action. Defendants, citing the rule that fraud must be pleaded specifically, claim plaintiffs' allegations of misrepresentation, reasonable reliance, and damages are insufficient to comply with that rule.

"Fraud actions . . . are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged. (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 574; see *Hall* v. *Department of Adoptions* (1975) 47 Cal.App.3d 898, 904 [121 Cal.Rptr. 223]; *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109 [128 Cal.Rptr. 901]; *Lavine* v. *Jessup* (1958) 161 Cal.App.2d 59, 69 [326 P.2d 238].)[17]

The specificity requirement serves two purposes. The first is notice to the defendant, to "furnish the defendant with certain definite charges which can be intelligently met." (*Lavine* v. *Jessup, supra,* 161 Cal.App.2d 59, 69; see *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d 104, 109; *Scafidi* v. *Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 553 [165 P.2d 260].) The pleading of fraud, however, is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the court can weed out nonmeritorious

---

[17]Witkin adds, however, that: "In reading the cases one gains the impression that entirely too much emphasis has been laid upon the requirement of specific pleading. The characterization of some actions as 'disfavored' has little to recommend it . . . and actions based on fraud are so numerous and commonplace that the implications of immoral conduct are seldom considered more serious than those involved in other intentional torts. Hence, while it seems sound to require specific pleading of the facts of fraud rather than general conclusions, the courts should not look askance at the complaint, and seek to absolve the defendant from liability on highly technical requirements of form in pleading. Pleading facts in ordinary and concise language is as permissible in fraud cases as in any others, and liberal construction of the pleading is as much a duty of the court in these as in other cases." (3 Witkin, *op. cit. supra,* Pleading, § 575, quoted in *Lacy* v. *Laurentide Finance Corp.* (1972) 28 Cal.App.3d 251, 258, fn. 2 [104 Cal.Rptr. 547].)

actions on the basis of the pleadings. Thus the pleading should be sufficient " 'to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.' " (*Scafidi* v. *Western Loan and Building Co., supra,* 72 Cal.App.2d 550, 553; see 8 Grossman & Van Alstyne, Cal. Practice (1981) § 982 and cases there cited.)

■ We observe, however, certain exceptions which mitigate the rigor of the rule requiring specific pleading of fraud. Less specificity is required when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy," (*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718]); "[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party . . . ." (*Turner* v. *Milstein* (1951) 103 Cal.App.2d 651, 658 [230 P.2d 25].)

Additionally, in a case such as the present one, considerations of practicality enter in. A complaint should be kept to reasonable length, and plaintiffs' fourth amended complaint, 64 pages long, strains at that limit. Yet plaintiffs allege thousands of misrepresentations in various media over a span of four years—representations which, while similar in substance, differ in time, place, and detail of language and presentation. A complaint which set out each advertisement verbatim, and specified the time, place, and medium, might seem to represent perfect compliance with the specificity requirement, but as a practical matter, it would provide less effective notice and be less useful in framing the issues than would a shorter, more generalized version.

■ Defendants object to the allegations of misrepresentation on the ground that the complaint fails to state the time and place of each misrepresentation, to identify the speaker and listener, and to set out the representation verbatim or in close paraphrase. The place and time of the television advertisements, however, is fully known to defendant General Foods, but became available to plaintiffs only through discovery.[18] That defendant equally knows the distribution of cereal box advertisements. A lengthy list of the dates and times of cereal ads on California television stations would add nothing of value to the complaint; the same is true for a list of California grocers marketing General Foods cereals. The language of the complaint—

---

[18]We do not know what information is available to the other defendants. (All defendants are represented by the same counsel and to date have asserted a unified defense.) If a particular problem arises as to a particular defendant, counsel may call that matter to the attention of the trial court.

all ads for sugared cereals within a given four-year period—is sufficient to define the subject of the complaint and provide notice to defendants.

General Foods also knows the content of each questioned advertisement. Plaintiffs initially lacked such detailed knowledge, and although they have now obtained copies of the television storyboards through discovery, quotation or attachment of such copies to the complaint would consume thousands of pages. Attachment of the storyboards, moreover, would not redress defendants' grievance, which is, as we understand it, not that they lacked knowledge of the content of the commercials but that they do not understand what it is in the images and words that gives rise to the alleged misrepresentations.

For plaintiffs to provide an explanation for every advertisement would be obviously impractical. We believe, however, that the trial court could reasonably require plaintiffs to set out or attach a representative selection of advertisements, to state the misrepresentations made by those advertisements, and to indicate the language or images upon which any implied misrepresentations are based. This is a method of pleading which has been endorsed in other cases involving numerous misrepresentations (see *People* v. *Superior Court (Jayhill Corp.)*, *supra*, 9 Cal.3d 283, 288; *Vogelsang* v. *Wolpert* (1964) 227 Cal.App.2d 102, 116 [38 Cal.Rptr. 440].) It represents a reasonable accommodation between defendants' right to a pleading sufficiently specific "that the court can ascertain for itself if the representations . . . were in fact material, and of an actionable nature" (8 Grossman & Van Alstyne, *op. cit. supra*, § 984 (fns. omitted)), and the importance of avoiding pleading requirements so burdensome as to preclude relief in cases involving multiple misrepresentations.[19]

■ Defendants also object that the complaint does not indicate that any particular child relied upon or even saw any particular television advertisement. They point out that although the complaint does assert that each of the adult plaintiffs purchased General Foods' products at a Safeway Store, it does not state which advertisements they, or their children, saw and relied upon.

A specific statement of the advertisements seen and relied upon by the individual plaintiffs would serve to demonstrate both that they possess a

---

[19]We did not suggest the necessity of plaintiffs pleading a representative selection of advertisements when we discussed their causes of action under the consumer protection laws. The requirement of specificity in pleading does not apply to those causes of action; the use of pleadings as a method by which the court can inquire into the merits of the case is confined to fraud actions.

valid cause of action in their individual capacity and that they are proper representatives for the class plaintiffs. The realistic setting of the case, however, may make such specific pleading impossible. A long-term advertising campaign may seek to persuade by cumulative impact, not by a particular representation on a particular date. Children in particular are unlikely to recall the specific advertisements which led them to desire a product, but even adults buying a product in a store will not often remember the date and exact message of the advertisements which induced them to make that purchase. Plaintiffs should be able to base their cause of action upon an allegation that they acted in response to an advertising campaign even if they cannot recall the specific advertisements.

Defendants further claim that the complaint is deficient because it describes one group, children, who receive the misrepresentations and a different group, parents, who purchase the product. (This objection applies only to the television commercials, since the parents saw the advertisements on the cereal boxes and in printed media.) Defendants' argument is inconsistent with the strategy of their own advertising. They are aware that the parents purchase the cereals, but they are also aware that parents do not exercise a totally independent judgment, but are influenced by the desires of their children. If such were not the case, defendants would not spend millions to advertise cereals on children's programs watched by very few adult purchasers.

Restatement Second of Torts section 533, states that "[t]he maker of a fraudulent misrepresentation is subject to liability . . . to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct." This proposition was indorsed as California law in *Varwig* v. *Anderson-Behel Porsche/Audi, Inc.* (1977) 74 Cal.App.3d 578, 581 [141 Cal.Rptr. 539]. We recognize that it does not quite cover the present case—plaintiffs do not allege the children repeated the representations to their parents, and we would imagine that in most cases they did not, but simply expressed their desire for the product. Repetition, however, should not be a prerequisite to liability; it should be sufficient that defendant makes a misrepresentation to one group intending to influence the behavior of the ultimate purchaser, and that he succeeds in this plan.

We turn finally to the question of damages. In an action for fraud, damage is an essential element of the cause of action (*Harazim* v. *Lynam*

(1968) 267 Cal.App.2d 127, 130 [72 Cal.Rptr. 670]); the successful plaintiff recovers damages as a matter of right.

The present complaint describes three distinct groups of plaintiffs: the organizational plaintiffs, the parents who purchased the cereals, and the children who consumed them. ■■■ With respect to the organizational plaintiffs, however, the allegations are inadequate to state a cause of action. Plaintiffs assert that some organizations such as the California Society of Dentistry for Children have spent funds to counter the influence of defendants' advertising; other organizations such as the American G.I. Forum of California have many members who have sustained injury. Neither theory justifies a damage claim by the organization itself. Any organizational expenditures were voluntary in character and not the result of any legally cognizable injury to the organization. If some of the members have suffered injury, they can seek redress in an individual or class action. Thus the trial court did not err in sustaining a demurrer without leave to amend as to the fraud causes of action on behalf of the organizations.

■■■ When we consider the damages claimed by the parents and children, we encounter a different problem. The allegations of the complaint are clearly sufficient to state a cause of action for restitution of the money spent to purchase the sugared cereals. The complaint also seeks additional damages, claiming that plaintiffs and members of their class encountered medical or dental injury from consuming sugared cereals and incurred expenses to treat those injuries. It does not, however, assert that any of the named children sustained any specific injury or that any of the named parents spent money to treat such injury. As a result, the allegations appear sufficient to assert injury to a subclass of parents and children (the class being all parents who purchased and children who consumed, even if no injury was incurred), but does not clearly place any of the individually named plaintiffs within their subclass. In view of the requirement for specific pleading in fraud actions, we believe the trial court could view the complaint as uncertain in its failure to make clear whether the individual child plaintiffs have incurred any specific health injury from the consumption of the sugared cereals, and whether their parents have spent any specific sums to treat those injuries.[20]

In summary, the complaint fails to state a cause of action in fraud on behalf of the organizational plaintiffs. Its allegations on behalf of the indi-

---

[20]The damage allegations are also uncertain in their broad use of the term "plaintiffs" without distinguishing between the different damage suffered by the parents, the children, and the organizational plaintiffs.

vidual plaintiffs—both parents and children—are insufficiently certain and specific, but those deficiencies can be cured by amendment. We recognize that plaintiffs have already had opportunities to amend, but without the guidance of this opinion, their failure to make the specific amendments we now require is excusable. We therefore uphold the order of the trial court sustaining demurrers to the third, fourth, fifth, and sixth causes of action of the fourth amended complaint, but disapprove the court's denial of leave to amend. The judgment must be reversed to permit plaintiffs to correct any uncertainty or lack of required specificity in their fraud causes of action.

## IV. CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY.

The seventh cause of action of the second amended complaint asserted that General Foods owed, and breached, a fiduciary obligation to the child plaintiffs. The trial court sustained a demurrer without leave to amend, with the result that this cause of action did not appear in subsequent versions of the complaint.

Plaintiffs' assertion of fiduciary duty in a consumer context is unique. Plaintiffs argue that imposition of fiduciary obligations is appropriate whenever one party with a stronger bargaining position or greater knowledge has the ability to reach out and exploit the weaker party.[21] Such duties are particularly appropriate here, say plaintiffs, because General Foods purports to give expert advice on diet and nutrition, and directs that advice to children, exploiting their trusting and uncritical acceptance.

But the efforts of commercial sellers—even those with superior bargaining power—to profit from the trust of consumers is not enough to create a fiduciary duty. If it were, the law of fiduciary relations would largely displace both the tort of fraud and much of the Commercial Code. Something more is needed. It is difficult to define that additional element precisely, and courts have traditionally refrained from definitions that would place strict limits on this equitable concept. It would appear, however, that before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. (See Scott, *The Fiduciary Principle* (1949) 37 Cal.L.Rev. 539, 540; Rest.2d Trusts (1959) § 2.)

---

[21]We do not agree that ability to exploit a disparity of bargaining power is a useful test of fiduciary duty. An agent owes a fiduciary duty to his principal, for example, even if the principal has the greater bargaining strength.

The relationship of seller to buyer is not one ordinarily vested with fiduciary obligation, even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value. In such transactions, the seller is held to the mores of the marketplace. A fiduciary, by contrast, assumes duties beyond those of mere fairness and honesty in marketing its product—he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary. (See Rest.2d Trusts (1959) §§ 2 and 170.) A fiduciary's power to transact business with his beneficiary is severely limited; he must use the utmost good faith and, if he profits from the transaction, the law presumes the agreement was entered into by the beneficiary "without sufficient consideration and under undue influence." (Civ. Code, § 2235; see *Ferrara* v. *La Sala* (1960) 186 Cal.App.2d 263 [9 Cal.Rptr. 179]; *Smith* v. *Zak* (1971) 20 Cal.App.3d 785 [98 Cal.Rptr. 242].) Such principles are generally inappropriate in a buyer-seller context, however disparate the party's resources.[22] We believe the various statutory and common law doctrines fashioned to protect the consumer from overreaching and deception are strong and flexible enough to accomplish that purpose, and that it is unnecessary to call upon the law of fiduciary relationships to perform a function for which it was not designed and is largely unsuited. We affirm the trial court's ruling sustaining a demurrer without leave to amend to this cause of action.

## V. CONCLUSION.

Although the parties argue primarily the sufficiency and specificity of the pleadings, the underlying controversy is of much greater dimension. Defendants engaged in a nationwide, long-term advertising campaign designed to persuade children to influence their parents to buy sugared cereals. Adapted to its audience, the campaign sought to persuade less by direct representation than by imagery and example. While maintaining a constant theme, the particular advertisements changed frequently. Plaintiffs now contend that these advertisements were deceptive and misleading, and while we do not know the actual truth of those charges, we must assume them true for the purpose of this appeal. Yet, if we apply strict requirements of specificity in pleading as defendants argue, the result would be to eliminate the private lawsuit as a practical remedy to redress such past deception or prevent further deception. By directing their advertisements to children, and changing them frequently, defendants would have obtained practical im-

---

[22]Doubtless in an exceptional case a court might be able to find that a close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance, justified imposing fiduciary duties. (See *Broomfield* v. *Kosow* (1965) 349 Mass. 49 [212 N.E.2d 556].)

munity from statutory and common law remedies designed to protect consumers from misleading advertising.

It can be argued that administrative investigation and rule making would be a better method of regulating advertising of this scope and character. The California Legislature, however, has not established the necessary administrative structure. It has enacted consumer protection statutes and codified common law remedies which in principle apply to all deceptive advertising, regardless of complexity and scale, and, we believe, regardless of whether the advertisement seeks to influence the consumer directly or through his children. Established rules of pleading should not be applied so inflexibly that they bar use of such remedies.

We therefore conclude that plaintiffs' complaint states a cause of action for injunctive relief and restitution under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and the false advertising law (Bus. & Prof. Code, § 17500 et seq.). Plaintiffs should be permitted to amend their complaint on behalf of the parent and child plaintiffs under the causes of action for fraud. We uphold the sustaining of a demurrer without leave to amend to bar the cause of action for breach of fiduciary duty, and the organizational plaintiffs' claim for damages.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

Mosk, J., Richardson, J., Kaus, J., Reynoso, J., and Grodin, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I concur in Justice Broussard's opinion but I would answer the question as to whether plaintiffs who are not business competitors can recover damages for harm suffered as a result of unfair competition (Bus. & Prof. Code, § 17200[1]) or false advertising (§ 17500). Logic, legislative purpose, and the weight of precedent all support the conclusion that noncompetitor plaintiffs may recover damages under these provisions.

### I.

The majority suggest that this court need not decide whether damages are available under the unfair competition and false advertising laws because all of the injured plaintiffs may recover damages under their causes of action

---

[1] Unless otherwise noted, all statutory references are to the Business and Professions Code.

for fraud. (Maj. opn., *ante,* at p. 215.) Evidently, the majority view the causes of action for fraud, unfair competition, and false advertising as providing plaintiffs with substantially equivalent opportunities for relief. To the extent that these alternative causes of action require the same type and quantum of proof, I concur in the majority opinion. I write separately, however, because the majority do not address whether the fraud causes of action require proof of the same elements required under the unfair competition and false advertising actions.

Under the traditional view of fraud, a plaintiff must show that the defendant made an *untrue* assertion of *fact,* which the defendant either knew to be untrue or had no reasonable ground for believing to be true. (Civ. Code, § 1710, subds. 1 and 2; *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 422 [159 P.2d 958]; see also *Nathanson* v. *Murphy* (1955) 132 Cal.App.2d 363, 367 [282 P.2d 174].)

By contrast, any statement that is "untrue *or misleading,*" and which the defendant knew or reasonably should have known to be "untrue *or misleading,*" falls within the definition of "false or misleading statements" proscribed by the false advertising law. (§ 17500 [former Pen. Code, § 654a], italics added; *People* v. *Wahl* (1940) 39 Cal.App.2d Supp. 771, 773 [100 P.2d 550]; *Audio Fidelity, Inc.* v. *High Fidelity Recordings, Inc.* (9th Cir. 1960) 283 F.2d 551, 555.) And, whether the defendant has engaged in unfair competition in violation of section 17200 (formerly Civ. Code, § 3369, subd. 3) depends upon "whether the public is *likely to be deceived* . . . ." (*Payne* v. *United California Bank* (1972) 23 Cal.App.3d 850, 856 [100 Cal.Rptr. 672], italics added, citing *People ex rel. Mosk* v. *National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 772 [20 Cal.Rptr. 516]; see also *West* v. *Lind* (1960) 186 Cal.App.2d 563, 567 [9 Cal.Rptr. 288]; *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 245 [342 Cal.Rptr. 10].) Thus, under the unfair competition and false advertising causes of action, a plaintiff need not prove either: (1) that an assertion of *fact* was made, or (2) that the assertion was *untrue.*

It appears, then, that under the traditional view of fraud, plaintiffs must sustain a greater burden to prove fraud than to prove unfair competition or false advertising. Recent developments do suggest, however, that the lines between fact and opinion, and between "untrue" and "misleading" statements, may be more apparent than real, at least in the consumer protection area. In *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282], for example, a manufacturer claimed that its "Golfing Gizmo" was "completely safe," and that the ball attached to the device "will not hit [the] player." (*Id.,* at pp. 108, 109.) This claim was

held to be an actionable misrepresentation of fact. (*Id.,* at pp. 111-114.[2]) Justice Tobriner, writing for the court, noted that sellers had traditionally been given a wide latitude to "puff" the virtues of their products, but that " '[t]he tendency of the modern cases is to construe liberally in favor of the buyer language used by the seller in making affirmations respecting the quality of his goods . . . .' [Citation.] [¶] This expansion of sellers' liability has been necessary to counteract the shrewd technique of those sellers who, instead of making broad factual assertions about their products, seek to couch their representations in opinion form." (*Id.,* at p. 112, fn. 7.)

Apparently, the majority assume that similarly expansive definitions of "untrue" and "fact" should be applied here. I have no disagreement with that approach. However, in the absence of a clear statement equating the fraud standard (as applied in the consumer protection area) with that of the unfair competition and false advertising laws, this court should decide whether the injured plaintiffs may recover damages under the latter provisions.

## II.

I would hold that injured consumers may state a cause of action for damages under the unfair competition and false advertising laws. The legislative history, purpose, and judicial treatment of the unfair competition law establish that courts may remedy a violation by awarding compensatory damages to *all* injured parties. Since a violation of the false advertising law is also, by definition, a violation of the unfair competition law (§ 17200[3]), the remedies of the latter section are available in actions brought under the false advertising law.

The unfair competition law codified a longstanding tort doctrine which provided businesses with a remedy for unfair practices committed by their competitors. (See Note, *Prevention of Unfair Business Practices in California: A Proposal for Effective Regulation* (1980) 32 Hastings L.J. 229, 236-237.) As originally enacted, the law expressly provided for injunctive relief, but was silent on damages. (Stats. 1933, ch. 953, § 1, p. 2482.[4]) Neverthe-

---

[2]In *Hauter,* this court applied section 402B of the Restatement Second of Torts which provides that a seller who makes to the public "a misrepresentation of a material fact" is liable to a consumer who suffers physical injury as a result of the misrepresentation.

[3]Section 17200 provides: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and *any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.*" (Italics added.)

[4]Until 1976, the law was codified as Civil Code section 3369, subdivisions 2-5.

less, the courts, exercising their inherent equitable powers, consistently ruled that competitors could recover compensatory damages in actions for unfair competition. (See, e.g., *Western Electro-Plating Co.* v. *Henness* (1961) 196 Cal.App.2d 564, 572-574 [16 Cal.Rptr. 691]; *Southern Cal. Disinfecting Co.* v. *Lomkin* (1960) 183 Cal.App.2d 431, 448-449 [7 Cal.Rptr. 43]; *Ojala* v. *Bohlin* (1960) 178 Cal.App.2d 292, 302-304 [2 Cal.Rptr. 919]; *Reid* v. *Mass Co., Inc.* (1957) 155 Cal.App.2d 293, 307-308 [318 P.2d 54]; *Hesse* v. *Grossman* (1957) 152 Cal.App.2d 536, 542 [313 P.2d 625].) In so ruling, the courts implicitly rejected the notion that the unfair competition law, by authorizing injunctive relief, precluded the award of compensatory damages. (*Ibid.*)

In 1976, the Legislature amended the unfair competition law to provide for restitution as well as injunctive relief. (Stats. 1976, ch. 1005, § 1, pp. 2378-2379.) The law, now codified as section 17200 et seq., remains silent as to compensatory damages. The question then becomes whether compensatory damages, long awarded to business competitors, may be awarded to consumers as well.

The unfair competition law provides absolutely no basis for preferring business competitors over consumers in determining which remedies are available. In *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111 [101 Cal.Rptr. 745, 496 P.2d 817], an action by consumers for injunctive relief, this court held that the unfair competition law protects consumers as well as business competitors. Indeed, "in a society which enlists a variety of psychological and advertising stimulants to induce the consumption of goods, consumers, rather than competitors, need the greatest protection from sharp business practices." (*Ibid.*)

Defendants argue that because the statute is silent on compensatory damages, the sole basis for holding that compensatory damages are available to *anyone* lies in the old equitable doctrine, which was available only to competitors. This proposition has already been rejected by this court.

In *People* v. *Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191], the Attorney General sought restitution on behalf of consumers who had been solicited by means of fraudulent sales presentations. At the time the *Jayhill* action was filed, the Legislature had not yet amended the statute to provide for restitution. Nevertheless, this court held that courts could use their "general equity jurisdiction" to grant restitution to injured *customers*. (*Id.,* at p. 286.) "Unless the Legislature—'in so many words, or by a necessary and inescapable inference' "—imposes a restriction on a court's equity powers, a court

"may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved." (*Ibid.*)

The precise issue presented here was addressed by the Court of Appeal in *United Farm Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334 [120 Cal.Rptr. 904]. Reasoning that *Jayhill* had implied that damages could be awarded in an appropriate case, the court concluded that a noncompetitor could recover damages under the unfair competition and false advertising laws. (*Id.,* at pp. 344-345.)[5]

Defendants urge this court to overrule *United Farm Workers* and to repudiate the principles announced in *Jayhill.* To support their position, they point to *Chern* v. *Bank of America* (1976) 15 Cal.3d 866 [127 Cal.Rptr. 110, 544 P.2d 1310].

In *Chern,* this court stated without explanation that damages are not recoverable under the false advertising law. (15 Cal.3d at p. 875.) Since the issue of damages for unfair competition was not raised by the parties, this court did not address *United Farm Workers, Jayhill,* or the numerous cases holding that damages are available to competitors for unfair competition. (See *ante,* p. 225.)

In my view, *Chern* should be overruled. Otherwise, this court would be forced to adopt one of two alternatives, neither of which is supported by law or logic. As one alternative, the court could conclude that competitors but not consumers may recover general damages. This approach would require the overruling of *United Farm Workers* and the repudiation of the sound principles announced in *Jayhill.* Moreover, to accord competitors but not consumers a damage remedy would directly conflict with this court's recognition that "consumers, rather than competitors, need the greatest protection from sharp business practices." (*Barquis* v. *Merchants Collection Assn.*, *supra,* 7 Cal.3d 94, 111.)

As a second alternative, it could be held that no plaintiff may recover general damages for unfair competition or false advertising. This approach

---

[5]In *Jayhill,* the Attorney General had sought exemplary damages as well as restitution. This court rejected the exemplary damage claim, but only because "in the absence of statute, exemplary damages are allowed only to the immediate person injured." (*Jayhill, supra,* 9 Cal.3d at p. 287.) By negative implication, it is evident that exemplary damages could be awarded in a suit brought by an injured customer. And, "[i]t could not be argued with any sincerity that a court which may give exemplary damages may not give general damages. Indeed, it is hornbook law that exemplary damages may not be awarded in the absence of an award of general damages." (*United Farm Workers, supra,* 47 Cal.App.3d at p. 345.)

would require this court not only to overrule *United Farm Workers* and to disapprove the reasoning of *Jayhill,* but also to overrule the many cases which have granted compensatory damages to competitors. These cases rest upon solid principles and should not be disturbed.

In short, to retain *Chern,* which is unsupported by precedent or reasoning, this court would have to overturn numerous other decisions which are grounded in traditional principles of equity and which are consistent with the purposes of the unfair competition and false advertising laws. (See generally, Note, *supra,* 32 Hastings L.J. at pp. 241-242.) Accordingly, I would overrule *Chern* and hold that noncompetitor plaintiffs may state a cause of action for damages under both the unfair competition and false advertising laws.