[No. B146295. Second Dist., Div. Four. Aug. 27, 2001.]

ROBERT J. PRATA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BANK ONE, NA, Real Party in Interest.

**COUNSEL**

Patricio T. D. Barrera for Petitioner.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, Ronald Reiter and

Joseph Ragazzo, Deputy Attorneys General, for the State of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Morrison & Foerster, Robert S. Stern, John Sobieski and Camilo Echavarria for Real Party in Interest.

## OPINION

**EPSTEIN, J.**—The principal issue in this writ proceeding is whether the trial court erred in granting real party in interest summary adjudication, terminating a cause of action brought under the unfair competition law (UCL).[1] The cause of action asserts that a bank was responsible for false and misleading advertising in promoting a credit program as "Same-As-Cash" when it was not. The trial court granted summary adjudication because it concluded this cause of action was not suitable as a representative action. The court reasoned that since there were many separate advertisements for the program in question, which was marketed in California through hundreds of merchants, it would have to hear evidence about thousands of transactions in order to rule on the merits.

Petitioner and amicus curiae, the Attorney General of California, argue that no such individualized inquiry is required in order to find a violation of section 17200. We agree with this position, and conclude that the trial court abused its discretion in ruling that the action should not be brought as a representative action under the UCL. For this and other reasons, which we shall discuss, we grant the petition for writ of mandate.

### FACTUAL AND PROCEDURAL SUMMARY

Petitioner Robert J. Prata claims that a credit card financing plan marketed and advertised by real party in interest Bank One, NA (Bank One), which promised "Same-As-Cash" financing for consumer purchases, violates the UCL. In October 1997, petitioner purchased stereo equipment, with installation, from a retail store in Los Angeles County. The store representative

---

[1]The Legislature did not designate a title for the statutory scheme beginning with Business and Professions Code section 17200 (all statutory references are to that code unless another is indicated). In its most recent cases examining section 17200 et seq., the California Supreme Court described these sections as the unfair competition law. (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 121 [96 Cal.Rptr.2d 485, 999 P.2d 718].) In earlier opinions, the court had termed it the Unfair Business Practices Act. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545]. We follow the most recent practice and refer to the unfair competition law, or UCL.

told him about a special promotion offered by Bank One. This program was described as one in which the borrower was required to make "No payments for 90 days! Same as Cash!" Based on an ad in the store and statements of the store representative, petitioner bought the equipment on the 90-day "Same-As-Cash" credit plan and applied for a credit card offered by Bank One. Petitioner understood that he would incur no finance charges or interest if he paid the full amount of the purchase before the end of the 90-day period. He did not receive any documents describing the details of the plan at the time of purchase, or later in the mail.

In fact, the "Same As Cash" program required two monthly payments during the 90-day period. If either payment was not made by the time and in the amount required, interest was charged from that point forward, and a fee was imposed. If both payments were made in full at the times specified, and the full debt was discharged by the end of the 90 days, there were no charges (except that Bank One had the use of the money received in the two periodic payments). In the ad seen by petitioner, and in at least two others, the borrower was directed to "ask for details." The detailed provisions of the transaction—the fine print—were in program documents given or available to the borrower.

It is undisputed that Bank One advertised its "Same-As-Cash" program in California, using 19 different advertisements. It also is undisputed that three of these advertisements (including the one seen by petitioner) did not advise the consumer that minimum monthly payments would be required. Instead, these three advertisements offered various terms (3, 6, or 12 months) on a "Same-As-Cash" basis and stated that the consumer should ask for details. The ad seen by petitioner stated: "Instant Credit for our preferred customers [¶] 90 days same as cash* [¶] *Ask for details TODAY!"

Petitioner paid the full purchase price within 90 days. Despite this, Bank One billed him for interest and fees because he had not made the two minimum monthly payments during the same-as-cash 90-day period. Petitioner disputed these charges and Bank One reported him to third party collection agencies.

Petitioner filed his original complaint in June 1999. The second amended complaint, the charging pleading, is brought under section 17204 on behalf of petitioner and "all other consumers similarly situated within the general public." Petitioner alleges causes of action for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the UCL, and defamation.

Bank One moved for summary adjudication of issues on the fourth cause of action, which is based on the UCL. It argued that petitioner was an

inadequate representative to bring a representative action under the UCL because his experience with the "Same-As-Cash" program was not typical, and because individual issues of proof predominated on the claim for restitution. Petitioner opposed the motion, arguing that he was a proper plaintiff in a representative action under the UCL.

A sales guide provided to some California merchants who offered the "Same-As-Cash" program was inconsistent on the subject of minimum monthly payments.[2] The guide had a section on answering common questions likely to be posed by consumers considering the program. One example given reads: "Customer: 'How does the 90-Days Same-As-Cash program work?' [¶] Response: 'You are not required to make the minimum monthly payments for the first two months and if you pay off your purchase by the due date shown on your third statement after your purchase, you will not have to pay any interest.' "

Bank One responds that other pages in the same sales guide discuss low monthly payments under the 90-days "Same-As-Cash" program and provide a table for calculating minimum monthly payments. Bank One cites the sales guide, which states: "PLAN 3 - SAC [Same-As-Cash] Monthly Payments, Interest Deferred. No finance charge for term selected if balance paid during the deferred period. Payments: 3% or $10, whichever is greater." But this paragraph is preceded by another which describes "PLAN 2 - NP/ID. No Monthly Payment, Interest Deferred. Interest accrues from date of transaction, if balance is not paid during deferred period."

While these may have been separate credit programs, the language of the manual is, at best, inconsistent, confusing, and potentially misleading. Thus Patrick Kelly, who had been a manager in the cardholder operations division for Bank One, submitted a declaration in support of the summary adjudication motion in which he said: "This question should have read: 'How does the No Payment Deferred Interest program work?' The fact that it stated 'same as cash' instead of 'No Payment Deferred Interest' was a mistake. Bank One did not intend to mislead merchants or consumers about the terms of the 'same as cash' finance plan." Mr. Kelly added that he had not heard from any merchant who was misled or confused about whether the "Same-As-Cash" plan required monthly minimum payments.

In its ruling granting summary adjudication the trial court said: "In the case [at] bench, plaintiff is seeking to bring a representative action against

---

[2]According to the declaration of Patrick Kelly, a former employee of Bank One, this sales reference guide was sent only to members of the Floor Covering Consumer Credit Association.

defendant for unfair competition pursuant to [Business and Professions] Code section 17200 et seq. based upon its use and implementation of the 'same as cash' plan. The evidence further discloses that defendant uses nineteen separate advertisements for the 'same as cash' plan in this state and uses many merchants throughout this state. However, plaintiff alleges he was the victim of a misrepresentation based upon a specific advertisement and false statements made to him by an employee of the store where he purchased stereo equipment. The false statements are an integral part of the contention in the complaint and would require this court to hear evidence about different merchants in different locales under different advertisements. In *Kraus v. Trinity Management Services Inc.*[, *supra,* 23 Cal.4th] 116, 138, the Court stated that a 17200 action is an action in equity and the trial court may decline to hear a representative action if the plaintiff is not a proper plaintiff. Here, the court would have to hear evidence about hundreds of transactions before it could issue a ruling. This is hardly the speedy procedure envisioned by the Legislature. The motion for summary adjudication as to the 4th cause of action is granted."

Petitioner sought a writ of mandate from this court. We issued an alternative writ. The Attorney General has filed a brief as amicus curiae, as authorized by section 17209. In it he supports writ relief by this court. Bank One has filed a responding letter brief.

DISCUSSION

I

The first issue is the appropriate standard of review. Petitioner and Bank One each argue that we must review the trial court's ruling for abuse of discretion. Amicus curiae argues the proper standard is de novo review.

Amicus curiae is correct that the general rule for review of a ruling on a motion for summary judgment or summary adjudication is de novo review. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) But "in the limited and exceptional circumstances where a trial court is required to exercise its discretion in passing on a Code of Civil Procedure section 437c motion for summary judgment, and grants or denies such a motion on the basis of its equitable determination of a question as to which the exercise of judicial discretion is proper, the standard of review on appeal necessarily is whether the trial court's decision amounted to an abuse of discretion. [Citations.]" (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 111 [105 Cal.Rptr.2d 559]; *Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 212, fn. 3 [285 Cal.Rptr. 717].)

The claim that the UCL cause of action is not a proper representative action under that statute calls for an equitable determination, for which exercise of judicial discretion is proper. "[B]ecause a UCL action is one in equity, in any case in which a defendant can demonstrate a potential for harm or show that the action is not one brought by a competent plaintiff for the benefit of injured parties, the court may decline to entertain the action as a representative suit. [Citation.]" (*Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th 116, 138.)

" 'A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand. [Citations.]' (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 [87 Cal.Rptr.2d 754].)" (*Adams v. Aerojet General Corp.* (2001) 86 Cal.App.4th 1324, 1341 [104 Cal.Rptr.2d 116].) We therefore review the ruling under the abuse of discretion standard.

## II

The UCL was recently and thoroughly reviewed by our Supreme Court in *Bank of the West v. Superior Court, supra,* 2 Cal.4th 1254. The court began its review with the language of section 17200, which defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

The court explained: "The Legislature intended this 'sweeping language' to include ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' [Citation.] In drafting the act, the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. *As a result, to state a claim under the act one need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public are likely to be deceived.'* (*Chern v. Bank of America* [(1976)] 15 Cal.3d [866,] 876 [127 Cal.Rptr. 110, 544 P.2d 1310]; see also *Committee on Children's Television Inc.* v. *General Foods Corp.* [(1983)] 35 Cal.3d [197,] 211 [197 Cal.Rptr. 783, 673 P.2d 660].)" (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at pp. 1266-1267, italics added.)

The court next examined remedies available under the UCL. "Section 17203, which incorporates the broad, statutory definition of 'unfair competition,' permits 'any court of competent jurisdiction' to enjoin '[a]ny person performing or proposing to perform an act of unfair competition . . . .' (§ 17203.) The section also authorizes courts to make such orders as 'may be necessary to restore to any person in interest any money or property,

real or personal, which may have been acquired by means of such unfair competition.' [Citation.] The purpose of such orders is 'to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains.' (*Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d 442, 449 [153 Cal.Rptr. 28, 591 P.2d 51] [interpreting the nearly identical language of section 17535]; see also *People* v. *Superior Court (Jayhill)* (1973) 9 Cal.3d 283, 288-289 & fn. 3 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191].) *The Legislature considered this purpose so important that it authorized courts to order restitution without individualized proof of deception, reliance and injury if necessary to prevent the use or employment of an unfair practice. (Committee on Children's Television Inc.* v. *General Foods Corp., supra,* 35 Cal.3d at p. 211; see also *Fletcher* v. *Security Pacific National Bank, supra,* 23 Cal.3d at pp. 449-453.)" (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1267, italics added.)

"Section 17200 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly.' [Citation.] ' "The statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone." ' ([*Hewlett* v. *Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499], 520 [63 Cal.Rptr.2d 118], citing *State Farm Fire & Casualty Co.* v. *Superior Court* (1996) 45 Cal.App.4th 1093, 1102 [53 Cal.Rptr.2d 229].)"³ (*South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th 861, 877 [85 Cal.Rptr.2d 301].) "Because section 17200's definition is 'disjunctive,' the statute is violated where a defendant's act or practice is unlawful, unfair, fraudulent or in violation of section 17500. (*State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 45 Cal.App.4th at p. 1102.)" (*Id.* at p. 878.)

"By their breadth, [sections 17200 and 17500] encompass not only those advertisements which have deceived or misled *because* they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." (*Day* v. *AT & T Corp.* (1998) 63 Cal.App.4th 325, 332-333 [74 Cal.Rptr.2d 55].)

---

³In a footnote at this point, the court noted: "Other language in *State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 45 Cal.App.4th at page 1104, has been disapproved by the Supreme Court in a discussion expressly limited to the context of 'an action by a competitor alleging anticompetitive practices.' (*Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187, & fn. 12 [83 Cal.Rptr.2d 548, 973 P.2d 527].)" (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 877, fn. 9.)

Under section 17204, an action under the UCL may be brought "by any person acting for the interests of itself . . . or the general public." Bank One and the trial court rely on language in *Kraus v. Trinity Management Services, Inc.*, *supra*, 23 Cal.4th 116, reiterating the authority of the trial court to decide that a particular case is not a proper representative action under the UCL. "[B]ecause a UCL action is one in equity, in any case in which a defendant can demonstrate a potential for harm or show that the action is not one brought by a competent plaintiff for the benefit of injured parties, the court may decline to entertain the action as a representative suit. [Citation.]" (*Id.* at p. 138.) With this background, we turn to the arguments of the parties.

## III

Petitioner argues first that summary adjudication on the fourth cause of action for violation of the UCL was improper because the trial court focused its ruling entirely on the restitution theory of recovery, and ignored the claim for injunctive relief. In fact, petitioner also sought injunctive relief authorized by the UCL.

The trial court's statement did not explicitly address the injunctive remedy. But it focused on proof of liability, which affects both restitution and injunctive relief. As we have discussed, the trial court stated that a 17200 action is one in equity, that it could decline to hear a representative action if the plaintiff is not a proper plaintiff, and that in this case it would have to hear evidence about hundreds of transactions before it could issue a ruling.

Thus, the trial court ruled that it would not allow the representative action to go forward, either for the remedy of restitution or injunctive relief. Petitioner's claim that the court ignored the claim for injunctive relief is not supported by the record.

## IV

Petitioner also argues that since he sought relief in his *own* right under the UCL cause of action, the trial court could not properly award summary adjudication for the entire fourth cause of action. We agree. Section 17203 provides that the court may make such orders or judgments "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." In addition, individuals are expressly granted a right of action under section 17204 of the UCL: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . by any person acting for the interests of itself, its members or the

general public." The term "person" is defined in section 17201 to include "natural persons . . . ."

Thus, petitioner had a right to seek restitution of the finance and interest charges if any were incurred by him. But the record reflects that he refused to pay these charges. Therefore, he is not entitled to individual restitution. Damages are not available under the UCL. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1266.) Nevertheless, under sections 17203 and 17204, he was entitled to pursue a claim for injunctive relief for a violation of the UCL.

In its return to the petition for writ of mandate, Bank One argues that the issue of injunctive relief is moot because it transferred its "Same-As-Cash" finance plan to a third party, GE Capital Consumer Credit Card Company, in December 1998, and is no longer servicing its former "Same-As-Cash" accounts. This argument was not raised in the trial court, and, of course, was not ruled upon by that court. It may not properly be raised for the first time here.

We conclude that on the record presented, and independent of the representative action issue, the trial court erred in granting summary adjudication on the entire fourth cause of action for violation of the UCL because petitioner still had an individual cause of action. We now turn to the merits of its ruling on the representative action.

V

Resolution of the representative action issue is complicated by a wide variance in the parties' characterization of the nature of the UCL claim. Petitioner argues the program itself was a violation of the UCL, regardless of any particular advertisement or document from Bank One. He argues the trial court erred because individual issues as to liability and remedy do not predominate. Instead, "the single common denominator involved in all of the deceptive practices [in Bank One's] advertisements [was]: It lured customers into its financing plan by promising them '90-Days Same-as-Cash' and then Bank One treated the financing <u>different</u> than cash during this 90 day period. That is the core misleading and deceptive nature of the program. All of the advertisements set forth by Bank One state that the financing is '90 days Same-As-Cash.' Bank One has admitted that it always intended to require monthly payments during the first 90 day period. In some cases Bank One buried the phrase 'monthly payments required' in small print. In other cases it simply did not mention anything about monthly payments. The common factor is that Bank One promised one thing, '90 days Same-As-Cash' (the

bait), and then assessed finance charges and late fees for failing to make 'monthly' payments during the 90 day period (the switch), even when the accountholder paid the full amount of the qualifying purchase within 90-days[.]"

Petitioner argues there are two ways in which the "Same-As-Cash" program is likely to deceive, and so constitute a violation of section 17200. The first is that Bank One's documents (including advertisements, training manuals, billing statements, disclosure statements, and credit card agreements) are inconsistent and confusing about whether minimum monthly payments are required during the "Same-As-Cash" period. The second is that if minimum monthly payments are required, the "Same-As-Cash" promotions are likely to deceive consumers. That is so, he argues, because requiring consumers to make minimum payments before the end of the promotional period is not the same as paying cash. As petitioner explains, "Every time Bank One requires a monthly payment, or assesses finance charges or late fees for failing to make monthly payments, it is no longer treating the financing as its advertisements state: 'Same as Cash.' "

The approach of amicus curiae is similar. But it focuses on the advertisement which petitioner saw in the store. This advertisement was one of three used in California by Bank One which said nothing about the requirement of minimum monthly payments. Instead, it directed the consumer to "Ask for details TODAY!" Amicus argues: "[T]his statement has the capacity to mislead members of the public into believing that payment in 90 days is the same as payment in cash today, and thus, no financing charges would be imposed within the 90-day interval. The phrase 'same as cash' explicitly represents that Bank One's financial plan is something entirely different than what it actually is—a revolving credit account requiring minimum monthly payments. If a consumer waits 90 days to make full payment, the consumer incurs finance charges. The only way to avoid finance charges during the 90-day period is to make certain minimum monthly payments during that interval. Every time Bank One requires a monthly payment or assesses interest or late charges, the finance plan can no longer be considered 'same as cash.' The Bank One plan, as evidenced by Prata, simply does not enable a consumer to defer payment for 90 days and have that deferred payment be treated the same as a cash payment at the outset of the transaction."

Bank One focuses on petitioner's particular transaction. It points out that according to the complaint, petitioner relied on a single advertisement in a single store, and on a representation of a single employee of the merchant, and on his failure to receive any of the disclosures or agreements which were to be given to consumers participating in the credit program. According to

Bank One, in order to determine whether there is a violation of the UCL, the trial court would have to examine each advertisement (19 were used in California); each consumer transaction (300,000 consumers); and determine whether the consumer received the program agreement and disclosures. The trial court agreed with this characterization of the action, and based its summary adjudication on the resulting conclusion that individual issues predominated over common issues, rendering a representative action inappropriate.

Bank One cites several cases to support its argument that the trial court properly exercised its discretion in refusing to allow petitioner to proceed on the basis of a representative action. The first is *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699 [262 Cal.Rptr. 899]. In that case, a grape grower sued a winery operator for breach of contract and violation of the UCL, based on payments made by the winery for the 1982 grape crop. The trial court found for the grower on both causes of action. It awarded restitution to the grower under section 17200. It also awarded restitution to 27 nonparty growers. The Court of Appeal reversed the restitution award to the nonparty growers. Only one nonparty grower had testified at trial, and the contracts of only 20 growers were introduced into evidence. The situation was complicated by the winery's efforts during and after trial to obtain releases from a number of the nonparty growers. The Court of Appeal concluded that there were "serious fundamental" due process problems in rendering a judgment in favor of a nonparty in the section 17200 case before it and reversed the judgment in favor of the nonparty growers. (*Bronco Wine Co., supra,* 214 Cal.App.3d at pp. 717, 721.)

The Supreme Court recently addressed these due process concerns in *Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th 116. The holding in *Kraus* is that disgorgement to a fluid recovery fund is not permitted under the UCL. The court observed that allowing fluid recovery in representative UCL actions might implicate the due process concerns raised by defendants in that case, and noted by the Court of Appeal in *Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at page 717. But it found no due process problem in a representative action seeking restitution under the UCL. Instead, the court suggested procedures to be implemented by the trial court to ensure restitution of any ill-gotten gains by a defendant who has violated the UCL.

The *Kraus* court held: "The judgment of the trial court for disgorgement of sums collected to secure liquidated damages may be enforced only to the extent that it compels restitution to those former tenants who timely appear

to collect restitution. This does not mean, as the dissent asserts, that defendants may retain the funds improperly taken from their former tenants as liquidated damages. On remand the trial court should order defendants to identify, locate, and repay to each former tenant charged liquidated damages the full amount of funds improperly acquired from that tenant, retaining the power to supervise defendants' efforts, to ensure that all reasonable means are used to comply with the court's directives." (*Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 138.)

In footnote 18, the Supreme Court described the claim procedure to be used for a representative action under the UCL: "Because an order to disgorge into a fluid recovery fund is not authorized in such representative UCL actions, the trial court may order *the defendant* to notify the absent persons on whose behalf the action is prosecuted of their right to make a claim for restitution, establish a reasonable time within which such claims must be made to the defendant, and retain jurisdiction to adjudicate any disputes over entitlement to and the amount of restitution to be paid." (*Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 138, fn. 18, italics added.)

We are confident that the procedures suggested by the Supreme Court in *Kraus* will obviate the due process concerns raised by the court in *Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at page 717 and cited by Bank One here.

Bank One also cites *South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th 861 (*South Bay Chevrolet*) as a case in which a representative action under the UCL was rejected because the claims were not sufficiently uniform. General Motors Acceptance Corporation (GMAC) provided short-term loans to finance South Bay's purchases of vehicles for resale. South Bay sued under section 17200, arguing that by calculating loan interest based on a 360-day year method (365/360 method) without disclosure, GMAC overcharged for interest. South Bay brought the action on behalf of itself and all California automobile dealers who received similar financing from GMAC. (*South Bay Chevrolet, supra,* 72 Cal.App.4th at p. 869.) The trial court granted summary judgment to GMAC on the ground that mini-trials would be necessary with respect to each California GMAC-financed dealership due to various uniquely individual questions of fact. The Court of Appeal affirmed the judgment on a different ground: that there was no likelihood of deception because South Bay knew GMAC was using the 365/360 method. (*Id.* at p. 870.)

In affirming the judgment, the *South Bay Chevrolet* court distinguished two cases relied upon by petitioner here, *Fletcher v. Security Pacific National*

*Bank,* supra, 23 Cal.3d 442, and *Chern v. Bank of America, supra,* 15 Cal.3d 866. As the court stated: "[T]hose cases are properly distinguishable as involving loans made to individual consumers, not to a financially sophisticated automotive dealership with knowledge of the lender's use of the 365/360 method in the parties' ongoing relationship." (*South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th at p. 883.) In *Chern,* the Supreme Court had found that use of the 365/360 method was likely to deceive the bank's customers. (*Chern, supra,* 15 Cal.3d at p. 876.) The *South Bay Chevrolet* court concluded that the plaintiff in that case failed to establish a violation of section 17200 because there was substantial evidence that it knew, expected and agreed "that GMAC would use the 365/360 method to calculate interest." (*South Bay Chevrolet,* 72 Cal.App.4th at p. 878.)

We agree with the distinction drawn in *South Bay Chevrolet* between actions brought to vindicate the rights of individual consumers under section 17200, such as the one before us, and actions such as the one in *South Bay Chevrolet,* which involve sophisticated business finance issues.

Our case is distinguishable from *South Bay Chevrolet* in another way. Here, there is no evidence that the consumers who participated in the "Same-As-Cash" financing program "knew, understood, agreed and expected" that the program was not really the "Same-As-Cash." Bank One submitted the declaration of Patrick Kelly, who was familiar with the program, in an effort to establish this knowledge. He explained the standard disclosures and agreements which were to be given to each participating consumer and merchant. He also declared that he was unaware of any complaints based upon consumers not having received the disclosures. This is not the kind of evidence presented in *South Bay.* (See *South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th at p. 879.)

Most fundamentally, *South Bay Chevrolet* is distinguishable because, given the nature of petitioner's challenge, there is no need to examine each consumer transaction to establish a violation of section 17200. The issue is, instead, whether the program as a whole was likely to mislead because it advertised financing as the "Same-As-Cash" while in fact minimum payments were required even when the initial 90-day period had not run and because fees and interest charges would be incurred if these minimum payments were not made. As amicus curiae points out, the "Same-As-Cash" program was actually a revolving credit account requiring minimum monthly payments.

Bank One also cites language in *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758 [259 Cal.Rptr. 789] to the effect that damages are not available in an action for a violation of the UCL because

individual claims for compensatory damages would be inconsistent with the streamlined procedure of the UCL. (*Id.* at p. 774.) Damages, as such, are not recoverable in a UCL action, but, as the *Dean Witter* court recognized, restitution is an appropriate remedy under the UCL. (*Ibid.*) It is the remedy sought here.

In *Bank of the West v. Superior Court, supra,* 2 Cal.4th 1254, the Supreme Court reiterated that the UCL is intended to deter violations of the UCL and " 'to foreclose retention by the violator of its ill-gotten gains.' " (*Id.* at p. 1267, quoting *Fletcher v. Security Pacific National Bank, supra,* 23 Cal.3d 442, 449.) The Supreme Court emphasized: "The Legislature considered this purpose so important that it authorized courts to order restitution without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice. (*Committee on Children's Television Inc. v. General Foods Corp., supra,* 35 Cal.3d at p. 211; see also *Fletcher v. Security Pacific National Bank, supra,* 23 Cal.3d at pp. 449-453.)" (*Bank of the West, supra,* at p. 1267.) Bank One's argument that the language in *Dean Witter* regarding individualized proof of compensatory damages should apply as well to proof of restitution is inconsistent with the Supreme Court's opinion in *Bank of the West.*

As we have seen, under the UCL, a representative plaintiff need not prove that members of the public actually were deceived, relied upon the fraudulent practice, or sustained any damage. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1267.) The only requirement is that the defendant's practice is unlawful, unfair, deceptive, untrue, or misleading. The burden of proof is modest: the representative plaintiff must show that members of the public are likely to be deceived by the practice. (*Id.* at pp. 1266-1267; see also *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1105.) It therefore was not necessary for the trial court to determine which advertisements, disclosures, or representations actually were relied upon by members of the public who participated in Bank One's "Same-As-Cash" promotion in order to determine liability. The trial court used the wrong standard in focusing on issues of proof regarding individual consumers.

This conclusion is supported by *Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th 116. In discussing its opinion in an earlier case, *Fletcher v. Security Pacific National Bank, supra,* 23 Cal.3d 442, the *Kraus* court said: "We distinguished a UCL claim from claims based on breach of contract or fraud, and held that once an unfair trade practice was established, a class action could proceed without individualized proof of lack of knowledge of the fraud." The Supreme Court continued its discussion of the

*Fletcher* opinion: "Rejecting a claim that the statutory authority to make orders necessary to restore money 'which may have been acquired' through an unlawful practice required proof of each transaction in order to determine that each claimant had been defrauded, we also held that section 17535 authorized a court to order restitution without showing the individual's lack of knowledge of the fraudulent practice in each transaction. (*Fletcher, supra,* 23 Cal.3d at pp. 450, 452.)" (*Kraus, supra,* 23 Cal.4th at p. 134.)

There is a substantial showing in this case that the three advertisements which did not mention the monthly minimum payments (including the one seen by petitioner) were false and misleading and violate section 17200. In each, Bank One's "Same-As-Cash" advertisement is likely to deceive the public because, in fact, the bank does not treat purchases under the program in the same way that cash purchases are treated. Instead, consumers are required to make monthly minimum payments during the 90-day period and are liable for fees and interest if they do not. The fact that disclosures and the credit agreement issued by Bank One stating the "details" of the program may have explained that the program was, in fact, not as advertised, does not ameliorate the deceptive nature of this advertising.

Bank One's use of 19 different advertisements to promote its program in California may impact the size of the representative action. It is conceivable that many of the advertisements are not likely to mislead within the meaning of section 17200. Since the trial court focused on the issues of individual deception, reliance, and damages, it did not consider whether the other advertisements used by Bank One to promote the "Same-As-Cash" program in California violated section 17200. On remand, in order to determine the size of the representative class, the trial court must make that determination. The trial court also may exercise its discretion to limit the representative action to consumers who relied on the advertisements and program materials produced by Bank One, rather than on representations made by retail store clerks about the "Same-As-Cash" program.

Finally, Bank One argues that petitioner is not a proper representative of other consumers because what happened to him was unique. It points to evidence that petitioner relied, at least in part, on representations by a store clerk, that he did not receive the disclosures and agreement related to the "Same-As-Cash" plan, the single advertisement he saw in the store, and that the first two credit card statements he received did not charge him monthly payments. Bank One also points to a paragraph in the Kelly declaration that consumers "typically" were given clear written disclosures, saw advertisements which said monthly payments were required, received credit card statements stating minimum monthly payments due, and were properly informed about the program by merchants.

But as we have discussed, Kelly was not in a position to establish this evidence. His testimony was based on the bank's standard practices, rather than actual evidence of consumer transactions. More fundamentally, Bank One's argument focuses once again on individual matters of proof irrelevant to liability under the UCL. "[T]he 'fraud' contemplated by section 17200's third prong bears little resemblance to common law fraud or deception. The test is whether the public is likely to be deceived. (*Committee on Children's Television, Inc.* v. *General Foods Corp.*[, *supra*,] 35 Cal.3d 197, 211 . . . .) This means that a section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. (35 Cal.3d at p. 211.)" (*State Farm Fire & Casualty Co.* v. *Superior Court*, *supra*, 45 Cal.App.4th at p. 1105.) Thus, Bank One's argument does not establish that petitioner is not a proper representative under section 17200.

## DISPOSITION

The petition for writ of mandate is granted. Respondent court is directed to vacate its rulings that petitioner has failed to state a cause of action under the UCL and that he may not bring a representative action under that statute; the court is directed to take further action in this case consistent with this opinion. Petitioner shall have his costs in this proceeding. (Cal. Rules of Court, rule 56.4.)

Vogel (C. S.), P. J., and Hastings, J., concurred.