124 Cal.Rptr.2d 844 (2002)
101 Cal.App.4th 1073
ROSENBLUTH INTERNATIONAL, INC., Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent. Jose Serrano, Real Party in Interest.
No. B158675.
Court of Appeal, Second District, Division Five.
September 5, 2002.
As Modified September 11, 2002.
Review Denied December 11, 2002.[*]
*845 Seyfarth, Shaw, F. Scott Page and Damon C. Anastasia, Los Angeles, Grant S. Palmer, pro hac vice, for Petitioner.
No appearance for respondent.
Law Office of Jonathan Weiss, Beverly Hills, for Real Party in Interest.
ARMSTRONG, J.
Under California's Unfair Competition Law (UCL) (Bus. & Prof.Code, § 17200 et seq.),[1] a private plaintiff who has itself suffered no injury may file an action for restitution and/or injunctive relief against a person or business entity alleged to be engaged in any "unlawful, unfair or fraudulent business act or practice...." (§ 17200.) As our courts have liberally construed the UCL, virtually the only limitation on such actions is that the plaintiff must be acting on behalf of "itself, its members or the general public." (§ 17204.) In this proceeding, we hold that the purported victims in this case, all large Fortune 1000 corporations that have individually negotiated written contracts with the defendant, are not the "general public" for purposes of the UCL.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Jose Serrano, filed this action on August 23, 2001. Purporting to act on his own behalf and "for the interests of the general public under the Unfair Competition Law," Serrano alleges that Rosenbluth, a travel agency serving large corporate clients, uses fraudulent accounting methods in order to understate significantly the amount of rebates, or "overrides," that are due to its customers. As a result, Rosenbluth "is wrongfully taking from its customers millions of dollars that rightfully belong to them."
On February 22, 2002, Rosenbluth filed a motion for summary judgment, alleging, among other grounds, that Serrano lacked standing as a "competent plaintiff to bring the action on behalf of the parties alleged to be injured, because he was not a party to any contract with Rosenbluth. (See Kraus v. Trinity Management Services, Inc. (2000) 23 Cal.4th 116, 138, 96 Cal.Rptr.2d 485, 999 P.2d 718.) In support of the motion, Rosenbluth submitted a declaration from Michael Boult, its Vice President of Supplier and Customer Relations.[2] *846 Mr. Boult stated that Rosenbluth's large corporate customers have substantial leverage in negotiating their travel contracts, and only Rosenbluth's largest corporate customers have the negotiating power to procure contracts with override sharing provisions of the type at issue in this lawsuit. Each contract is individually negotiated, usually over a period of months. The evidence before respondent court, including Serrano's responses to Rosenbluth's statement of undisputed facts, established that Serrano was not a Rosenbluth customer, was not a party to any contract with Rosenbluth, and personally did not suffer any injury as the result of Rosenbluth's alleged actions. In fact, none of Rosenbluth's customers are parties to this action.
Respondent court denied the motion after a hearing on April 30, 2002. In so doing, the court stated: "[T]he real issue here, as I see it, is one of equity, whether or not it would be inequitable here to find that the plaintiff cannot bring this action. I have not really seen anything which demonstrates to me that kind of unfairness evident here."
Having conducted the appropriate de novo review of respondent court's order (Union Bank v. Superior Court (1995) 31 Cal.App.4th 573, 579, 37 Cal.Rptr.2d 653), we conclude, as a matter of law, that Serrano lacks standing as a "competent plaintiff to bring this action because he has failed to demonstrate that he filed the action on behalf of "the general public."

DISCUSSION
The Unfair Competition Law (UCL), permits "any person acting for the interests of itself, its members or the general public" (§ 17204) to file an action for restitution and/or injunctive relief (§ 17203) against a person or business entity alleged to be engaged in any "unlawful, unfair or fraudulent business act or practice...." (§ 17200) As interpreted by our Supreme Court, the UCL allows a private plaintiff who himself has suffered no injury to file a lawsuit under the UCL in order to obtain relief for others. (Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 561-562, 71 Cal. Rptr.2d 731, 950 P.2d 1086.) The representative plaintiff need only show that members of the general public are likely to be deceived. "Allegations of actual deception, reasonable reliance, and damage are unnecessary." (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 211, 197 Cal. Rptr. 783, 673 P.2d 660; see also Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1266-1267, 10 Cal.Rptr.2d 538, 833 P.2d 545.)
"Class actions and representative UCL actions make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage attorneys to undertake private enforcement actions." (Kraus v. Trinity Management Services, Inc., supra, 23 Cal.4th at p. 126, 96 Cal.Rptr.2d 485, 999 P.2d 718.) Where the UCL action is based on a contract, the representative plaintiff may seek to vindicate the rights of individual consumers who are parties to the contract. (See Prata v. Superior Court (2001) 91 Cal.App.4th 1128, 1143, 111 Cal.Rptr.2d 296 [creditor falsely advertised credit program as "Same as Cash" without advising consumers that the program required minimum monthly payments]; AICCO, Inc. v. Insurance Co. of North America (2001) 90 Cal.App.4th 579, 109 Cal.Rptr.2d 359 [suit against insurance *847 company alleging improper transfer of policies and assignment of liabilities without consent of policyholders]; Hernandez v. Atlantic Finance Co. (1980) 105 Cal. App.3d 65, 164 Cal.Rptr. 279 [suit against used car dealership and finance company for violations of the Rees Levering Automobile Sales Financing Act].) However, a UCL action based on a contract is not appropriate where the public in general is not harmed by the defendant's alleged unlawful practices. (See South Bay Chevrolet v. GMAC (1999) 72 Cal.App.4th 861, 888-890, 85 Cal.Rptr.2d 301 [no showing members of the public were likely to be deceived by wholesale security agreement between lender and automotive dealers].
The Prata court drew a fitting distinction between actions brought to assert the claims of individual consumers under section 17200, which lend themselves well to representative UCL cases, and actions that involve sophisticated business finance issues, which do not. (Prata, supra, 91 Cal.App.4th at p. 1143, 111 Cal.Rptr.2d 296.) Where the subject of the action is an unlawful business practice or false advertising that harms individual consumers, the consumer/victims, powerless individually, may welcome the opportunity to have their rights vindicated in a representative action under the UCL. This is not such a case, however. The alleged victims here are not unwary targets of false advertising (Committee on Children's Television, supra), innocent youths corrupted by lawbreaking retailers (Stop Youth Addiction, supra), aggrieved used car purchasers (Hernandez, supra) or a "singularly dense" group of consumers who fall prey to misleading advertising designed to lure them into high-interest loan contracts. (See Beneficial Corporation v. Federal Trade Commission (3d Cir.1976) 542 F.2d 611, 618.) To the contrary, Rosenbluth's undisputed evidence establishes that its only customers are sophisticated corporations, most in the Fortune 1000, each of which negotiates contracts individually with Rosenbluth and each of which presumably has the resources to seek damages or other relief from Rosenbluth should it choose to do so.
Indeed, Serrano's effort to act as the self-appointed representative of these alleged victims not only raises significant logistical and constitutional issues, it may well leave the victims worse off than they would be if they filed individual actions against Rosenbluth. The case of Bronco Wine Co. v. Frank A Logoluso Farms (1989) 214 Cal.App.3d 699, 262 Cal.Rptr. 899, amply illustrates the problem. In Bronco Wine, a grape grower (who, unlike Serrano, was actually damaged by the defendant's acts), filed suit on behalf of itself and other grape growers who had contracts with the defendant winery. In its cause of action under the UCL, the plaintiff alleged the defendants had committed unlawful business practices that included "wrongfully rejecting and refusing to accept grapes, adopting arbitrary quality standards, applying quality standards unreasonably in order to pay less for accepted grapes than the price agreed to by Bronco, threatening to sue and suing growers who complained of Bronco's conduct." (Id. at p. 715, 262 Cal.Rptr. 899.) The plaintiff did not seek to join the nonparty growers in the action, and "[t]the only nonparty grower who appeared as a witness at trial testified he had no objection to the amount received from Bronco for his 1982 grape crop." (Id. at p. 716, 262 Cal.Rptr. 899.)
The Court of Appeal reversed the trial court's award of restitution damages to the nonparty growers under the UCL. The court first noted that the judgment raised serious due process concerns: "[N]one of the nonparty growers were ever given notice of these proceedings or an opportunity *848 to be represented by counsel of their own choosing. [¶] Of the 27 nonparty growers who received restitution damages, the contracts of only 20 of these growers were presented into evidence. Other exhibits showed that all recipients of restitution damages did have written contracts with Bronco." (Bronco Wine Co. v. Frank A. Logoluso Farms, supra, 214 Cal.App.3d at p. 718, 262 Cal.Rptr. 899.) One such grower had "expressly disavowed any right to restitution"; others had challenged the validity of releases hastily procured by Bronco when it became evident the court would award restitution damages to the nonparty growers.
The calculation of the nonparty plaintiffs' damages also presented some difficulty, because the process of determining the amount of restitution damages did not involve an "automatic calculation" as it might in the case of a form contract. As in this case, each of the nonparty victims had a separate contract with the defendant, thus each victim's damages would have to be calculated separately. (Bronco Wine Co. v. Frank A Logoluso Farms, supra, 214 Cal.App.3d at p. 720, 262 Cal.Rptr. 899.)
By purporting to act as their self-appointed representative and asserting claims on their behalf in a UCL action, Serrano could in fact deprive Rosenbluth's alleged victims of the individual opportunity to seek remedies far more extensive than those available under the UCL, which limits the plaintiffs to injunctive relief and restitution. If Rosenbluth's actions are as serious as Serrano alleges, its alleged victims would derive more benefit from individual lawsuits. As the court noted in Bronco, a representative action to which the alleged victims are not parties "raises serious fundamental due process considerations."
"[B]ecause a UCL action is one in equity, in any case in which a defendant can demonstrate a potential for harm or show that the action is not one brought by a competent plaintiff for the benefit of injured parties, the court may decline to entertain the action as a representative suit." (Kraus v. Trinity Management Services, Inc., supra, 23 Cal.4th at p. 138, 96 Cal.Rptr.2d 485, 999 P.2d 718.) In the present case, Rosenbluth has demonstrated by undisputed evidence that those on behalf of whom Serrano purports to bring the action are not members of the "general public." Accordingly, Rosenbluth is entitled to summary judgment as a matter of law.

DISPOSITION
A peremptory writ shall issue directing respondent court to vacate its order of April 30, 2002, denying the motion of defendant Rosenbluth International, Inc. for summary judgment, and enter a new and different order granting the motion. Costs of this proceeding are awarded to petitioner Rosenbluth.
I concur: GRIGNON, J.
TURNER, P.J., Dissenting.
I would deny the mandate petition. The respondent court correctly decided that there is a triable issue as to whether plaintiff, Jose Serrano, has standing to pursue the Unfair Practices Act claim against defendant, Rosenbluth International, Inc. Further, the trial court could conclude that defendant's unreasonable refusal to respond to interrogatories, production demands, and admissions requests warranted denial of the summary judgment motion.
First, in terms of the merits, my views in this regard are premised on the express language of the Unfair Practices Act. Business and Professions Code section 17204 expressly provides, "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by ... any person acting for the interests of ... the general public." (Italics added; Stop Youth Addiction, Inc. v. *849 Lucky Stores, Inc. (1998) 17 Cal.4th 553, 560-567, 71 Cal.Rptr.2d 731, 950 P.2d 1086; AICCO, Inc. v. Insurance Co. of North America (2001) 90 Cal.App.4th 579, 591-592, 109 Cal.Rptr.2d 359.) The purpose of the Unfair Practices Act is described in pertinent part as follows: "The Legislature declares that the purpose of this chapter is to ... foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." (Bus. & Prof.Code, § 17001; Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 179, 83 Cal.Rptr.2d 548, 973 P.2d 527; ABC Internal Traders, Inc. v. Matsushita Electric Corp. (1997) 14 Cal.4th 1247, 1256, 61 Cal.Rptr.2d 112, 931 P.2d 290.) The Unfair Practices Act is to be liberally construed. (Bus. & Prof.Code, § 17002; ABC Internal Traders, Inc. v. Matsushita Electric Corp., supra, 14 Cal.4th at p. 1256, 61 Cal.Rptr.2d 112, 931 P.2d 290; People v. Centr-O-Mart (1950) 34 Cal.2d 702, 704, 214 P.2d 378.) Under the Unfair Practices Act, a private person may pursue a claim based on "`"any unlawful business practice."'" (Stevens v. Superior Court (1999) 75 Cal.App.4th 594, 603, 89 Cal.Rptr.2d 370, citing Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra, 17 Cal.4th at p. 562, 71 Cal.Rptr.2d 731, 950 P.2d 1086; orig. italics.)
The issues before us are framed by the pleadings. (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1252, 32 Cal. Rptr.2d 223, 876 P.2d 1022 overruled on another ground in Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 498, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Oates v. City of Lincoln (2001) 93 Cal.App.4th 25, 30, 112 Cal.Rptr.2d 790.) The complaint alleges: defendant, the second-largest travel agency in the United States, falsely promises its customers that they will receive rebates from airlines who provide air transportation; defendant falsely agrees to refund to its customers 100 percent of rebates that their employees earn while flying on business; defendant in fact prepares "a phony spreadsheet calculation that significantly understates the amount of rebates" that are owed to its customers; and all of defendant's customers are misled in this regard. If this is true, and it bears emphasis that no definitive evidence has been received on the issue of whether defendant has engaged in the alleged accounting fraud, this is a case where plaintiff has standing to sue on behalf of the general public. The general public is prejudiced by the alleged misconduct, if it is true, because: corporations which are victims of the alleged misuse of the spreadsheet, which frankly amounts to theft by defendant, are necessarily going to pass on the added costs to their customersthe public; companies doing business with defendant will be less able to efficiently compete because they have been defrauded by the purported misappropriation of rebates; and the Unfair Practices Act is premised on the demonstrably accurate assumption that fair and honest competition is hindered by "unfair, dishonest, deceptive, destructive, [and] fraudulent" practices. (Bus. & Prof.Code, § 17001.) Further, the evidence in support of the summary judgment motion indicates that many of defendant's customers are Fortune 1000 companies. In my opinion, protecting not only small businesses or individuals from accounting fraud, but also large corporations, furthers the public interest.
I agree though with my colleagues' observations concerning possible due process problems. (Bronco Wine Co. v. Frank A. Logoluso Farms (1989) 214 Cal.App.3d 699, 716-721, 262 Cal.Rptr. 899 [class action decision expressly refusing to address due process issue in representative lawsuit context].) There are likewise potential confidentiality issues which will probably arise in connection with disclosure of individual *850 agreements with defendant's customers. However, neither of these considerations warrants a grant of summary judgment. Putting aside the fact that neither issue is definitively resolved in defendant's brief 4-page separate statement listing only 15 undisputed facts, questions of due process can be resolved including giving notice to its customers. Further, without affecting current contracts, the respondent court could issue injunctive relief concerning future misuse of spreadsheets by defendant. If the as-yet unproven claims of misuse of the spreadsheets are true, morality, reason, the public interest, and the law impel the conclusion that, at least in terms of future contracts, such accounting fraud should be enjoined. Likewise, questions of disclosure of contractual terms can be resolved as part of the discovery process. It may very well be that ultimately plaintiff will not have access to the contracts at issue because of trade secret considerations and his case will fail. It also may be the case that issue or evidence sanctions will be imposed against defendant because of its privilege claims thereby leading to a potential legal victory for plaintiff. (Code Civ. Proa, § 2023, subds. (b)-(c); Fuller v. Superior Court (2001) 87 Cal.App.4th 299, 305-308, 104 Cal.Rptr.2d 525; A & M Records, Inc. v. Heilman (1977) 75 Cal.App.3d 554, 564-565, 142 Cal.Rptr. 390.) Nonetheless, neither the due process question nor discovery disputes have been resolved nor were they susceptible to resolution as part of the present summary judgment litigation.
Second, defendant has refused, with one exception, to respond to plaintiffs interrogatories, document production demands, and admissions requests. With one exception, defendant has objected to every interrogatory, document demand, and admission request. Some of the objections are frivolous. In response to an admission request, defendant has even refused to deny the allegation it failed to pass on the rebates to its customers. The respondent court acted well within its discretion in refusing to grant summary judgment in the face of such discovery abuses by defendant. (Code Civ. Proa, § 437c, subd. (h); Stationers Corp. v. Dun & Bradstreet, Inc. (1965) 62 Cal.2d 412, 421, 42 Cal.Rptr. 449, 398 P.2d 785; People v. $4,503 United States Currency (1996) 49 Cal.App.4th 1743, 1748-1749, 57 Cal. Rptr.2d 467.)
Finally, it bears emphasis that plaintiff has introduced no evidence to support his serious allegations of corporate misconduct. My analysis in this opinion, apart from the discussion of very serious discovery abuses, is based entirely upon the issues as posited by the pleadings and the limited evidence introduced during the summary judgment litigation. The legal and factual underpinnings of my analysis, that defendant has engaged in what amounts to theft from major corporations in this country thereby prejudicing the public interest, has yet to be proven.
NOTES
[*] Kennard, J., dissented.
[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.
[2] Serrano raised evidentiary objections to portions of Mr. Boult's declaration. However, Serrano did not obtain rulings on the evidentiary objections at the hearing below. Accordingly, the objections are waived for the purpose of appellate review. (Sharon P. v. Arman, Ltd. (1999) 21 Cal.4th 1181, 1186, 91 Cal.Rptr.2d 35, 989 P.2d 121.)