Filed 10/22/13  Grimm v. Capital One CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RAY GRIMM, JR. et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CAPITAL ONE, N.A.,<br><br>    Defendant and Respondent. | D063079<br><br><br>(Super. Ct. No. 37-2012-00098599-CU-OR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.


Law Offices of Ronald H. Freshman and Ronald H. Freshman for Plaintiffs and Appellants.

Doll Amir & Eley and Hunter R. Eley, William H. Edmonson for Defendant and Respondent Capital One, N.A.

The Dreyfuss Firm and Lawrence J. Dreyfuss for Defendants and Respondents T.D. Service Company.

Plaintiffs and appellants Ray Grimm and Daran Grimm, husband and wife, sued defendant and respondent Capital One, N.A. (Capital One) and other entities, alleging the following causes of action:  (1) "[d]efective deeds of trust"; (2) "wrongful loan modification agreement"; (3) "defective substitutions of trustee, assignments of deeds of trust, notices of default and notices of trustee sale"; (4) slander of title; (5) quiet title; and (6) violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.). The court sustained Capital One's demurrer to the complaint without leave to amend.[1]

Asserting that Mortgage Electronic Registration Systems, Inc. (MERS) has not initiated foreclosure, the Grimms contend they stated facts sufficient to support each cause of action in their complaint and, in any event, the court abused its discretion in denying them leave to amend.  We affirm the judgment.[2]

---

[1]    T.D. Service Company (T.D. Service) has asked us to dismiss the Grimms' appeal as to it under California Rules of Court, rule 8.104, noting the Grimms' notice of appeal failed to mention the court's judgment in its favor.  The Grimms concede the point in their reply brief, explaining this appeal is from the order sustaining Capital One's demurrer to their complaint with prejudice, not an appeal from the judgment obtained in favor of T.D. Service.  Accordingly, on appeal, we do not address T.D. Service's contentions, and deny its motion for judicial notice of its papers filed to support its separate demurrer and the court's judgment in its favor.

[2]    The Grimms failed to designate the final judgment of dismissal of their complaint against Capital One as part of the appellate record; therefore, Capital One urges us to dismiss this appeal, which is taken from the court's minute order.  The existence of an appealable judgment or order is a jurisdictional prerequisite to an appeal.  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)  We agree with those courts that deem an order sustaining a demurrer without leave to amend to incorporate a judgment of dismissal. (*Beazell v. Schrader* (1963) 59 Cal.2d 577, 579-580.)  Here, the trial court's order reveals a clear intention to make a final ruling.  (See *Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 454.)  The order fully resolved all issues between the parties. In the interest of justice and to prevent delay, we exercise our discretion to deem the trial

FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken from the Grimms' complaint; we accept as true the properly pleaded material allegations and facts that may properly be judicially noticed. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 806; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 435.) The Grimms attached to their complaint copies of deeds of trust, substitutions of trustee, a mortgage loan modification agreement, notices of default, notices of trustee's sale, notices of rescission, and assignments of the deed of trust, and incorporated these documents in the complaint by reference.[3]

The Grimms financed the purchase of their Rancho Santa Fe residence with a promissory note for $2,255,000 and a deed of trust, which was recorded in April 2005. The deed of trust identifies the lender as Chevy Chase Bank, F.S.B. (Chevy Chase).[4] MERS is listed as the beneficiary. In April 2008, plaintiffs and Chevy Chase entered into a mortgage loan modification agreement that MERS signed.

---

court's minute order sustaining the demurrer as a judgment of dismissal, and will treat the Grimms' notice of appeal as applying to the judgment. (See, e.g., *Beazell*, at pp. 579-580; *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098.)

[3] The Grimms state in a footnote in the complaint: "All documents referenced herein are 'PURPORTED' documents and instruments, the legitimacy of which the Grimms neither admit nor deny until adequate forensic examinations can be undertaken during the course of this litigation. Aside from the content, there are numerous questionable writings, modifications and markings on the copies of documents obtained from the San Diego County Recorder's Office which brings into question whether or not any of these documents were copes [*sic*] of the originals allegedly signed. The Grimms therefore do not admit to the validity or actual existence of any of these documents or instruments." (Some capitalization omitted.)

[4] Capital One is successor by merger to Chevy Chase.

In February 2010, a "notice of default and election to sell under deed of trust" was recorded; it indicated the Grimms owed $113,332.23 on their home loan. In March 2010, MERS recorded a substitution of trustee, naming T.D. Service as replacement trustee. Notices of trustee's sale were recorded in August 2010 and November 2010. In December 2010, a notice of rescission of the notice of default was recorded.

In November 2011, an assignment of deed of trust was recorded, transferring all beneficial interest under the March 2005 deed of trust to Capital One. That same month, another notice of default was recorded, indicating the Grimms owed $130,613.79 on their home loan.

In December 2011 and March 2012, substitutions of trustee were recorded, naming T.D. Service as replacement trustee. In January 2012, a notice of rescission of the second notice of default was recorded. Weeks later, yet another notice of default was recorded; it indicated the Grimms owed $193,255.12.

In June 2012, the Grimms filed a verified complaint against T.D. Service, Capital One, North Island Financial Credit Union and Doe defendants, alleging six causes of action: "defective deeds of trust"; "wrongful loan modification agreement"; "defective substitutions of trustee, assignments of deeds of trust, notices of default and notices of trustee sale"; slander of title; quiet title, and violation of the UCL. In it, the Grimms sought the following relief: (1) an award of damages against defendants in an amount to be shown at trial; (2) a judicial declaration of the rights and duties of the parties; specifically, that the attempt to foreclose on the subject property was wrongful; (3) an order cancelling the deeds of trust, the other instruments attached to the complaint, and

4

"any other recorded documents clouding the Grimms' title"; (4) a declaration that the Grimms are the true and rightful sole owners of the subject property; (5) a temporary restraining order and preliminary and permanent injunction prohibiting defendants and their agents from transferring any interest in the subject property and proceeding with any foreclosure or any collection action against the Grimms; (6) civil penalties pursuant to statute, restitution, injunctive relief and costs of suit according to proof, and (7) any other equitable relief.

In the "Introduction" to their complaint, the Grimms allege the defendants engaged in fraud and securitization of home loans; they incorporate by reference in all their causes of action the following allegations: "As will be shown herein, not only are Defendants' actions *fraudulent*, but represent criminal violations of California Mortgage Fraud Statutes including, but not thereby limited to, [] Penal Code section 532[f, subdivision ](a)(4), and an affront to long-standing property and recording laws; such reliance on fabricated and forged documents also undermines the integrity of the judicial system. Defendants, their agents, officers, employees, and affiliated or associated parties, have engaged in, and continue to engage in, a pattern of unlawful, *fraudulent* or unfair practices causing victims of their actions, including the Grimms, to lose or be in jeopardy of losing their homes through illegal foreclosure. This honorable court should be disturbed and appalled at the increasing reports, rampant widespread and irresponsible practices of document *fraud and forgery* by 'foreclosure mills' and 'robo-signers' utilized by defendants in foreclosures. These actions have not only been alleged for years but have now been brought to light by admissions from defendants themselves in numerous

5

depositions and tacit admissions in statements concerning postponing foreclosures due to questionable or *fraudulent* documents which shall be directly identified in this action and affidavits as presented in other courts throughout the country. Not only did Wall Street bundle toxic loans into 'mortgage backed securities' through a process called 'securitization,' so did certain defendants identified in this instant action. These 'securities were sold to investors in the form of certificates or mortgage bonds, whereby the investors became the 'certificateholders' or 'bondholders' of securities that were fed these toxic assets described as 'loans' or mortgages' when in truth, these 'loans' or mortgages' were actually securities transaction in disguise." (Italics added; some capitalization omitted.)

The Grimms also assert in the complaint that " 'true sales' never took place due to the failure to follow the legal requirements for the transfer of non-negotiable instruments and thereby [defendants did not acquire] any legal, equitable, and pecuniary interest in the Grimms' notes and [deeds] of trust. As a result, thereof, [defendants, who] purport to be the Grimms' creditors, actually have no secured or unsecured right, title, or interest in the Grimms' notes and deeds of trust; and therefore no right to collect mortgage payments, demand mortgage payments, or report derogatory information against the Grimms to the credit reporting agencies." (Some capitalization omitted.)

The Grimms allege they were "willfully and deliberately induced into signing both notes and deeds of trust which were not intended as such, but as collateral for the sales of securities. Under the terms of pooling and servicing agreements, the Grimms' purported

6

mortgage obligations have been paid in full, therefore there is no 'default.' " (Some capitalization omitted.)

Capital One demurred to the complaint on grounds it did not state facts sufficient to constitute any of the several causes of action. In their opposition to Capital One's demurrer, the Grimms asserted, "[t]here are no defects in [their] [c]omplaint or alleged causes of [a]ction." At various points, the Grimms added, "Defendant fails to meet the legal standards to sustain its [d]emurrer in this section." The Grimms also stated they "are not challenging [Capital One's] compliance with the foreclosure law *per se*, but claiming there was no proper assignment or demonstrated ownership of the purported 'loan.' "

The trial court sustained the demurrer without leave to amend. Regarding the causes of action for defective deeds of trust and other instruments, the court concluded a deed is not rendered unenforceable solely because the lender is designated as both trustee and lender. Further, it ruled the Grimms failed to allege fraud with the requisite specificity. The court sustained the demurrer on the cause of action for wrongful loan modification agreement on grounds the Grimms failed to show that Civil Code,[5] section 2923.6, which deals with loan modification plans, created a duty on Capital One's part. Moreover, the Grimms did not plead with sufficient specificity their claim that the loan agreement was modified after the parties signed but before the agreement was recorded. It found the Grimms did not specify the time, place, and contents of Capital One's

---

5       All statutory references are to the Civil Code unless otherwise stated.

7

purported false representations; therefore, it sustained the demurrer regarding the slander of title cause of action. It sustained the demurrer regarding the quiet title cause of action, finding the Grimms did not tender the necessary amount due under the deed of trust, and they did not show they were exempt from the requirement to tender. Finally, the court found that the Grimms did not specify an independent unlawful business activity that Capital One purportedly violated; therefore, it sustained the demurrer on the UCL cause of action.

DISCUSSION

I. *Standard of Review*

The applicable appellate review standards are settled: " 'A demurrer tests the sufficiency of a complaint as a matter of law.' [Citation.] In reviewing the propriety of the sustaining of a demurrer, the 'court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.' " (*Dey v. Continental Cent. Credit* (2008) 170 Cal.App.4th 721, 725-726.) Plaintiffs bear the burden of proving a reasonable possibility any defects can be cured by amendment. (*Zelig v. County of Los Angeles* (2002) 27

8

Cal.4th 1112, 1126.)  The reviewing court independently examines the complaint under this standard.  (*McCall v. PacificCare of California, Inc.* (2001) 25 Cal.4th 412, 415; *Dey*, at p. 726.)

## II. *Causes of Action for Defective Deeds of Trust and Other Instruments*

" 'Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer.' " (*Qualcomm, Inc. v. Certain Underwriters At Lloyd's, London* (2008) 161 Cal.App.4th 184, 191.)  We conclude the Grimms' purported causes of action for defective deeds of trust and other instruments fail to state facts sufficient to constitute a cause of action.  Our conclusion mainly turns on the recitals in the deed of trust executed by the Grimms, which give precedence to any contrary factual allegations. (*Performance Plastering v. Richmond American Homes of California* (2007) 153 Cal.App.4th 659, 665; *Dodd v. Citizen's Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

The gravamen of the first cause of action is fraud.[6]  The Grimms twice assert in bold print in the section of the complaint addressing this cause of action:  "[They] were

---

[6]     Citing no law, the Grimms state in their opening brief:  " 'Pleading a claim' compared to pleading facts sufficient to constitute a cause of action as required to sustain a demurrer are very different standards for ruling, particularly without leave to amend. [¶]  That [they] allege to have been fraudulently induced into signing the purported [deed of trust] is just that, an allegation, not a cause of action alleged in [their] complaint," such as to require specificity.  " ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.]  'We are not bound to develop appellants' argument for them. [Citation.]  The absence of cogent legal argument or citation to authority allows this court

*fraudulently* induced into signing the [deed of trust]." (Italics added.) The Grimms further claim on information and belief that "there were numerous unrecorded 'assignments' of this [deed of trust] through the MERS 'system,' or by other means, which were not disclosed to them. Said information and belief is partly predicated on [the defendant credit union] being a MERS member, which is commonly understood to mean the 'loan' has been 'securitized' and 'sold' to numerous 'investors.' [¶] [] Accordingly the Grimms contend [the deed of trust] "was *fraudulent* or wrongfully recorded because the 'title to their property was not clear of these previous breaks in or clouds on title and said [deed of trust] is therefore unsecured and invalid." [¶] [¶] [] An action to remove a *fraudulently* or wrongfully recorded instrument is authorized by [section] 3412 . . . ."[7] (Italics added; some capitalization omitted.)

The third cause of action for "defective substitutions of trustee, assignments of deeds of trust, notices of default and notices of trustee sale," likewise sounds in fraud. Specifically, the Grimms alleged on information and belief that each of the challenged documents was "bogus, wrongful, invalid and wrongfully or *fraudulently* recorded," and

---

to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

[7] Section 3412 states: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." This statute was interpreted in *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 200, which concluded, " 'In a suit to remove a cloud the complaint must state facts, not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid.' "

10

likewise most of them were subject to an "action to remove a *fraudulently* or wrongfully recorded instrument" under section 3412. (Italics added.)

To state a cause of action for fraud, plaintiffs must allege (1) a misrepresentation (a false representation, concealment or nondisclosure) of a material fact; (2) knowledge of its falsity or scienter; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. (*Robinson Helicopter Co. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) The heightened pleading standard for fraud requires " 'pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Ibid.*) The normal policy of liberally construing pleadings against a demurrer will not be invoked to sustain a fraud cause of action that fails to set forth such specific allegations. (*Lazar*, at p. 645.)

The heightened pleading rule serves two purposes. One is "notice to the defendant, to 'furnish [it] with certain definite charges which can be intelligently met.' " (*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216, superseded by statute on another ground as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.) The second is to weed out nonmeritorious actions based on the complaint; to " ' "enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' " (*Committee On Children's Television, Inc.*, at pp. 216-217.)

Exceptions exist to the particularity requirement, however. "Less specificity is required when 'it appears from the nature of the allegations that the defendant must

11

necessarily possess full information concerning the facts of the controversy . . . . ' "
(*Committee on Children's Television, Inc. v. General Foods Corp., supra*, 35 Cal.3d at p.
217; see *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47 [the
pleading rule for fraud "is relaxed when it is apparent from the allegations that the
defendant necessarily possesses knowledge of the facts"].)  A court may relax the strict
pleading standards where a plaintiff alleges many affirmative misrepresentations
occurring over a period of several years in methods whose time and place are fully
known to the defendant.  (See *Committee On Children's Television, Inc.*, at p. 217
[dispensing with heightened pleading requirement where multiple plaintiffs alleged
thousands of misrepresentations in various media, including television advertisements
and cereal boxes, over a span of four years]; see also *Alfaro v. Community Housing Imp.
System & Planning Ass'n, Inc.* (2009) 171 Cal.App.4th 1356, 1384-1385 [particularity
requirement is not violated where 38 plaintiffs alleged fraudulent nondisclosures on the
part of unnamed corporate employees concerning the existence of a deed].)

The Grimms provide no additional information from which we may conclude
Capital One will necessarily have superior knowledge of any alleged fraudulent
recordation of the instruments.  And, because the first and third causes of action sound in
fraud, the Grimms were required to allege specific facts in order to make out a prima
facie charge of fraud, or to provide Capital One with sufficient notice to defend against
the charge.  They failed to do so.  "The pleading of fraud . . . is . . . the last remaining
habitat of the common law notion that a complaint should be sufficiently specific that the
court can weed out nonmeritorious actions on the basis of the pleadings."  (*Committee On*

12

*Children's Television*, *supra*, 35 Cal.3d at pp. 216-217.) The Grimms several times repeat in their complaint that each instrument is "bogus, wrongful, invalid and wrongfully or fraudulently recorded." But that allegation did not suffice to put Capital One on notice to prepare its defense. The Grimms' claim that they needed to conduct further forensic examination on the documents is also unavailing in light of the requirement for specific pleading. Accordingly, we will not dispense with the long-held principle of law in California requiring heightened pleading for fraud.

### III. *Arguments Against MERS and Securitization of the Loan*

The Grimms attack MERS' status as a beneficiary: "A 'Trustee' is required to be a third party having been entrusted by both the Beneficiary ('Lender') and Trustor with the power of sale. Because [Chevy Chase] was not a third party to the [deed of trust], this means that: 1) no Trustee existed (therefore no 'substitution' of a trustee could occur. 'Substitution' by its very name, means there needed to be a trustee in the first place to replace or substitute); or 2) because MERS was listed 'SOLELY as nominee' for the 'lender' and as the 'beneficiary' under the [deed of trust]; because there was no statement that title was held in trust, said [deed of trust] was actually a 'mortgage' not a [deed of trust]. . . . [¶] The Grimms contend that [Chevy Chase] as 'Lender' was the actual 'beneficiary' according to the [deed of trust]; and MERS was nothing of the sort. At best, MERS was [Chevy Chase's] agent ('solely as nominee') the legitimacy of which is yet to be determined." The Grimms continue, "[I]f, arguendo, MERS is deemed to be the 'beneficiary' (which the Grimms contend MERS was not) because the 'Trustee' is

13

identified as same entity as the named 'Lender,' either way, recording of all assignments [was required under section 2932.5]."[8]  (Some capitalization omitted.)

Under California law, MERS has authority to act as the beneficiary under a deed of trust.  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155-1156 ; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270-271 [MERS has the authority to act as nominee for the lender].)  Here, the deed of trust states that MERS was "the beneficiary."  However, the deed of trust also specifically restricts MERS' interest to that of a " 'nominee' " for the lender.  "A 'nominee' is a person or entity designated to act for another in a limited role—in effect, an agent."  (*Fontenot*, at p. 270.)  Furthermore, the trial court rejected the Grimms' contention by relying on *Bank of America Nat. Trust & Savings Ass'n v. Century Land & Water Co* (1937) 19 Cal.App.2d 194, 196 ["It has been held that the trustee may also be the beneficiary and may become a purchaser at the sale."].)

To the extent the Grimms rely on section 2932.5, such reliance is unavailing.  "It is well established that section 2932.5 does not apply to trust deeds, in which the power of sale is granted to a third party, the trustee.  [Citation.]  Section 2932.5 applies to mortgages, in which the mortagor or borrower has granted a power of sale to the mortgagee or lender."  (*Herrera v. Federal National Mortgage Assn.* (2012) 205

---

8      Section 2932.5 states:  "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.  The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

14

Cal.App.4th 1495, 1509.) The Grimms have not alleged that they were unable to make their payments or negotiate a modification of their loans because they did not know the lender's identity. Thus, the Grimms' contention that MERS is not a proper beneficiary under the deed of trust cannot support their claim that Capital One violated section 2932.5 because MERS is recorded as a beneficiary.

Similarly, the Grimms' allegations regarding securitization of the loans do not suffice to state a claim for defective title. Securitization does not affect the validity of a loan. A secured promissory note that is traded on the secondary market remains secured because the mortgage or deed of trust follows the note. (§ 2936 ["The assignment of a debt secured by mortgage carries with it the security."].) Thus, a lender or trustee does not lose its interest in the loan when it "was packaged and resold in the secondary market, where it was put into a trust pool and securitized." (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1099; *Hafiz v. Greenpoint Mortgage Funding, Inc.* (N.D.Cal. 2009) 652 F.Supp.2d 1039, 1042-1043 [rejecting the plaintiff's theory that "defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"].)

The Grimms filed a letter bringing to our attention a recently published case, *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, which they claim "is relevant to the issue on appeal related to [Capital One's] improper securitization procedures and lack of assignment into the trust by the closing date rendering the assignment of the subject deed of trust invalid." The Grimms do not discuss the *Glaski* case by explaining its holding and its relevance to the facts of this case. Accordingly, we regard the matter as

forfeited. In any event, we have reviewed the *Glaski* case, which raises different legal issues because it involved a foreclosure sale, as opposed to this case, where there was no foreclosure. Moreover, the points for which the Grimms cite the *Glaski* case—the role of MERS as a beneficiary and the alleged securitization of their loan—leave unaffected our conclusions that the causes of action for defective instruments were not pleaded with sufficient facts, and that Capital One did not lose its interest in the loan though securitization of the loan. Therefore, we conclude the Grimms' reliance on *Glaski* is unavailing.

IV. *Cause of Action for Wrongful Loan Modification*

The Grimms allege they were wrongfully induced to sign the loan modification agreement which included "absurd" language: "The [loan modification agreement] itself states (which is not controlling [the deed of trust] and Note are) that the 'Note Holder' mean [*sic*] the 'Lender identified above or anyone who takes the Note (defined below)' which was NOT defined, and does not matter as [the deed of trust] controls; 'by transfer or assignment and who is entitled to receive payments under the Note.' Notes are NOT transferred or assigned but are indorsed [citation] and [section] 2926 still control where [the deed of trust] follows the Note, not the other way around. This inaccurate language in this [loan modification agreement], which leads to false and misleading conclusions which the Grimms could not possibly be expected to have understood related to the underpinnings of basic contract law . . . the parties must understand what they are signing. The language of the document is NOT clear and explicit and is absurd. [Citations.] [¶] The Grimms could NOT have possibly understood the terms of this [loan

16

modification agreement] given the numerous inequities in the document and should be deemed a 'contract of adhesion' as a take it or leave it, regardless whether it is a legal document or not." (Some capitalization omitted.)

The Grimms' subjective failure to fully understand the effect of the loan modification agreement at the time of signing it is defeated by several cardinal rules of contract law. One is that a party's failure to "carefully read a contract . . . is no defense to the contract's enforcement." (*Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 872.) Another is that a bad bargain, if that is what the Grimms made, is not a ground for setting aside the agreement. (See *Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 132 ["If we are temporarily persuaded against our better judgment to do something about which we later have second thoughts, we must abide the consequences of the risks inherent in managing our own affairs."].) A third is that mutual consent is determined by objective rather than subjective criteria. (*Meyer v. Benko* (1976) 55 Cal.App.3d 937, 942-943.) Viewed objectively, the Grimms' signing of the loan modification agreement would lead a reasonable person to believe that they understood and agreed to its terms. Therefore, based on the Grimms' allegations, their undisclosed misunderstanding of one section of the loan modification agreement is irrelevant. (*Steller v. Sears, Roebuck & Co.* (2010) 189 Cal.App.4th 175, 185.)

V. *Cause of Action for Slander of Title*

The Grimms allege in their complaint that the property was slandered because Capital One and other defendants caused to be recorded wrongful and fraudulent instruments, including the deed of trust, notices of default, notices of rescission,

17

assignment and sales of trusts. They claim the instruments were "invalid" and "constitute improper clouds on [Grimms'] title to the property and are all consisting of unprivileged publications of a false statement." (Some capitalization omitted.)

To make out a valid claim for slander of title, the Grimms were required to establish each of the following four elements: (1) a publication, (2) without privilege or justification, (3) that is false, and (4) that causes direct and immediate pecuniary loss. (*Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1051.)

The publication of a notice of default is a privileged communication. (§ 2924, subd. (d)(1).) Further, contrary to the Grimms' legal conclusion that the recorded documents are "invalid," they allege no facts in the complaint indicating that is so. The recording of the notices of default caused no damage to the Grimms because the notices were subsequently rescinded and defendants never recorded a notice of sale. The Grimms did not allege facts indicating that the recording of the instruments somehow caused them direct pecuniary loss. The complaint therefore fails to state facts sufficient to constitute a slander of title cause of action.

## VI. *Cause of Action for Quiet Title*

In their quiet title cause of action, the Grimms incorporated by reference their fraud allegations and claimed misrepresentations relating to the signing of the note and deed of trust. Specifically, the complaint alleged: "Due to the *fraudulent* nature of the foreclosure and lack of pecuniary interest in the Note and Deed of Trust by the foreclosing parties, the Grimms are not required to tender. . . . The Grimms do not dispute the right to securitize the mortgage, but allege that *as a result of improper*

18

*procedures*, the true owner of his [*sic*] mortgage is unclear.  As a result, on information and belief, the Grimms have been paying improper entities and improper amount."  (Italics added; some capitalization omitted.)  Given our conclusion that the Grimms failed to state a claim for relief under a fraud theory, they cannot state a cognizable cause of action for quiet title based on fraud.

VII.  *UCL Cause of Action*

The Grimms allege that Capital One violated the UCL by the following actions: attempting to dispose of the Grimms' property; inducing the public to purchase the Grimms' property at the trustee sale; disseminating or causing to be disseminated before the public by publishing by recording said notice of trustee sale; and seeking to confiscate the Grimms' property by "credit bid" for the benefit of Capital One when the property cannot in its present condition be sold due to the recorded *fraudulent* and wrongful instruments.

In order to state a claim for a violation of the UCL, the Grimms must allege that Capital One committed a business act or practice that is fraudulent, unlawful, or unfair.  (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 986.)  A UCL claim " 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct.  [Citation.]  Thus, California courts have consistently interpreted the [UCL law] broadly.' "  (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 877.)

In discussing this cause of action in their opening brief, the Grimms allege Capital One violated Penal Code section 532f, subdivision (a)(4), which states that "[a] person

19

commits mortgage *fraud* if, with the intent to defraud, the person . . . [f]iles or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."  (Italics added.)  The Grimms' argument on this cause of action, in its substantive entirety, is that the trial court erred in sustaining the demurrer because "even a cursory review of [their] complaint shows" "unlawful business activities . . . which are too numerous to list."  However, the Grimms only specify one other unfair practice that they claim Capital One engaged in: "recording *fabricated and/or fraudulent* documents." (Italics added.)

In light of our conclusion the gravamen of the Grimms' complaint sounds in fraud, and their pleading lacks specificity, the Grimms' UCL claim necessarily fails because they have not pleaded any other unfair practice unrelated to fraud.  (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147.)

### VIII.  *Motion To Amend*

In considering whether the Grimms have carried the burden of showing that they can amend their complaint to cure any defects, we note that they must show "in what manner" they can amend their complaint "and how that amendment will change the legal effect" of their pleading.  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  "[L]eave to amend should not be granted where . . . amendment would be futile."  (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685.)

Here, besides the fact we decline to interpret the pleadings liberally because the allegations sound in fraud, the Grimms failed to carry their burden to show how the

20

complaint can be amended. They apparently believe, as they stated in their complaint, that they are not in default: "Under the terms of the Pooling and Servicing Agreements, the Grimms' proposed mortgage obligations have been paid in full, therefore, there is no 'default.' " Further, in opposing the demurrer in the trial court, they never stated how they proposed to amend their complaint. Rather, they flatly asserted, "There are no defects in [their] complaint or alleged causes of action." (Some capitalization omitted.)

On appeal, their efforts are no more detailed or helpful. In their opening brief, after restating the law regarding amendment of complaints, they apply that law to this case in one sentence that includes a citation to their arguments made in the hearing on the demurrer motion: "Appellants offered to amend their complaint and Respondents did not object." Because the Grimms fail to specify how the complaint can be amended, we conclude the trial court did not err in declining to grant them leave to amend their complaint. (Accord, *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1615.)

DISPOSITION

The judgment is affirmed.  Capital One, N.A. is awarded its costs on appeal.


                                                              O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.